HEROLD, Internal Revenue Collector, v. KAHN et al.

(Circuit Court of Appeals, Third Circuit. February 7, 1908.)

No. 49.

1. TAXATION—PAYMENT OF TAXES UNDER PROTEST—RECOVERY.

When taxes are paid under protest that they are being illegally exacted, or with notice that the payer contends that they are illegal, and intends to sue to compel repayment, sufficient foundation for such suit is established.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, §§ 1003, 1004.]

2. INTERNAL REVENUE—INHERITANCE TAX—PAYMENT UNDER PROTEST — RECOVERY.

Payment of an inheritance tax under protest, upon the internal revenue collector's threat that, unless it should be promptly paid, it would be collected with a penalty and interest at 1 per cent. per month, was made under such duress as made the payment involuntary, for the purpose of a suit to recover it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 29, Internal Revenue, §§ 83, 84.]

3. SAME—ASSESSMENT OF TAX—VALUE OF LIFE ESTATE—MORTUARY TABLES.

War Revenue Act June 13, 1898, § 29, 30 Stat. p. 464 [U. S. Comp. St. 1901, p. 2308], imposes inheritance taxes in certain cases, but provides no method of assessing the value of life estates. Section 31 (30 Stat. p. 466 [U. S. Comp. St. 1901, p. 2310]) makes all administrative, etc., provisions of law, including laws governing the assessment of taxes not theretofore especially repealed, applicable to the act. Rev. St. § 3447 [U. S. Comp. St. 1901, p. 2277], provides that, when the mode of assessing any tax imposed is not provided for, the Commissioner of Internal Revenue may establish the same, etc. *Held* that, even if mortuary tables may be resorted to in ascertaining the value of a life estate where the life tenant is living, the value should be based upon the actual duration of the tenant's life, and not upon a fictitious duration derived from such tables, where he has died before the assessment, though his death is unknown when the assessment is made, and though under section 30 the tax related back to the time of testator's death.

In Error to the Circuit Court of the United States for the District of New Jersey.

See 147 Fed. 575.

Harrison P. Lindabury, for plaintiff in error.

Robert H. McCarter and Conovers English, for defendants in error.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge.    This case comes before the court on writ of error to the United States Circuit Court for the District of New Jersey, to review a final judgment of that court, entered December 11, 1906.

Suit was brought by the defendants in error, in the Supreme Court of the state of New Jersey, against the plaintiff in error, to recover legacy taxes assessed and paid under the act of Congress of 1898, known as the "War Revenue Act." The suit was removed, under the statute in that behalf, to the court below, and finally resulted in the judgment now under review.    The case was tried by the court below without a jury, trial by jury having been, by agreement of the parties,

expressly waived. Pursuant to the request, of counsel, the court made certain findings of fact in the case, and entered the same as a special verdict therein. From these findings of fact, we summarize the following:

The defendants in error are the duly qualified executors of the last will and testament of Abraham Wolff, who died October 1, 1900, leaving to survive him two daughters as his only issue, viz., Addie W. Kahn and Clara W. Wertheim. By his last will and testament, the testator gave all the rest, residue, and remainder of his estate, real and personal, to his trustees, the survivors and survivor of them, and his successors, upon the following trusts:

"1. To divide, set apart and hold the same in as many equal portions or shares as I shall leave daughters me surviving and the issue of a deceased daughter, allotting, however, and turning over to the issue of a deceased daughter only the portion or share which their parent would have taken if living, that is to say per stirpes and not per capita, and as to the share of a surviving daughter, to invest and keep invested the personal estate and proceeds of real estate of such share, if sold, in such securities as by the Thirty-sixth article of this my will they are authorized to invest in.

"2. To collect and receive the rents, issues, interest and income of the portion or share so to be set apart for each of my said daughters and to apply the same to her use so long as she shall live free from any control of her husband.

"3. Upon the death of such daughter leaving issue her surviving, to dispose of her share or portion among such issue in shares as she may appoint by will, and in default of such appointment, or so far as such appointment shall not be made, to dispose thereof among such issue in shares per stirpes and not per capita, and if she shall leave no issue her surviving, to continue to hold her share or portion for the benefit of her sister, if living, for life, in trust to collect and receive the rents, issues, interest and income thereof, and to apply the same to her use so long as she shall live, and upon or in case of her death, to divide the same to and among her issue, if any, in shares as she may appoint by will, and in default of such appointment, or so far as such appointment shall not be made, to dispose thereof among such issue, in shares per stirpes and not per capita, and in default of such issue to divide the same to and among the following persons in the proportions herein provided, that is to say: [naming them]."

On May 19, 1903, the said executors, pursuant to the requirement of section 30 of the war revenue act (Act June 13, 1898, c. 448, 30 Stat. 465 [U. S. Comp. St. 1901, p. 2308]), filed with the plaintiff in error, as internal revenue collector, a schedule and return, together with an affidavit, showing the legacies and distributive shares arising from the personal property of every kind belonging to the estate of Abraham Wolff, including therein the life interests of the two daughters, under the foregoing sections of his said will. This affidavit was filed with the return, for the purpose of bringing to the attention of the collector certain items not included in the return, which the executors claimed were not taxable. These disputed items have no relation to the claim in suit. According to this return, the amount of the said testator's residuary estate was $5,295,537.94. The inventoried valuation of one-half of the said residuary estate, which, by the terms of the said will, was trusteed for the benefit of the said Clara W. Wertheim, was the sum of $2,647,768.97. By a letter dated July 10, 1903, the executors were advised by the collector that the commissioner at Washington was not satisfied with the return, in reference

to matters having no bearing on the issue before us, and they were requested to forward a new return, for transmission to the department.

Following this, correspondence ensued between the attorneys of the executors and the said collector, and also the Commissioner of Internal Revenue, at Washington, with the result that Mr. Carnochan, one of said attorneys, went to Washington on the 13th of August, 1903, and had a personal interview with the solicitor of the Internal Revenue Department, in reference to the various items which the executors claimed should not be taxed, but which the department claimed were taxable. Mr. Carnochan, at this interview, stated to the said solicitor that, until the legal questions relating to the taxability of said items were determined, it would not be possible to file a new return. At the same time, he stated that the executors were willing to have the legal questions involved determined in any suitable way. The solicitor stated that he would consider the matter. Under date of September 2, 1903, the attorneys for the executors wrote to the Commissioner of Internal Revenue at Washington, referring to the interview of Mr. Carnochan with the solicitor of the department, and stated that:

"He [Carnochan] was informed that the course of business was such that the matter could not be formally reported to your department from the collector of Newark, until the latter part of last month, August, and that then the matter would be taken up and a determination reached as to certain items, the taxability of which was more or less discussed with the solicitor."

The letter then asks:

"Is there anything further, by way of proof or brief, that your department desires in the matter? We understand that no assessment has yet been made."

Under date of September 8, 1903, the said attorneys received the following letter from the deputy commissioner:

"This office is in receipt of your letter of the 2d inst., relative to the estate of Abraham Wolff, in which you ask if anything further, by way of proof or brief, is desired in the matter. In reply, you are advised that no further information is desired, and that action will be taken in the matter in the near future."

No further information or communications were had, from either the collector or the Internal Revenue Commissioner, until under date of October 26, 1903, a letter from the collector, the plaintiff in error, was received by the executors, inclosing a notice and demand for taxes assessed against the estate of Abraham Wolff, and addressed to the defendants in error, as executors. This notice was as follows:

"You are hereby notified that a tax under the internal revenue laws of the United States, amounting to $107,398.16, the same being a tax upon legacies and distributive shares, has been assessed against you by the Commissioner of Internal Revenue and transmitted by him to me for collection. Demand is hereby made for this tax, which is due and payable within one year of death of testator when death occurred on or after July 1, 1901, and in case testator died before July 1, 1901, tax must be paid before July 1, 1902, but in all cases payment of tax before distribution is imperative and unless paid on or before the time when due and payable, it will be my duty to collect the same with a penalty of 5 per centum additional, and interest at 1 per centum per month.

"Payment may be made to me at Newark P. O. Building.

"$107,398.16.　　　　　　　　　　　Herman C. H. Herold, Collector."

Under the same date, the attorneys for the executors received a like letter from the collector, inclosing a copy of said notice. Following the receipt of this notice and demand one of the said attorneys, on behalf of the executors, on November 4, 1903, personally called at the office of the plaintiff in error, collector as aforesaid, with a certified check for the amount of money specified in the notice, and paid the tax. At the same time, he stated on behalf of the executors that the tax was paid under protest, and in addition, filed with the said collector a written protest, in which they asserted that the whole of the said tax was illegal and invalid, illegally and improperly assessed, that they paid the same only under protest, and only because of the requirement of the department, and to prevent proceedings to compel collection, and for interest and penalty. They then proceed, as follows:

"They particularly protest that the said tax is illegal and invalid, and is illegally and improperly assessed, so far as it includes a tax on life interests created by said will, and they pay the same only under protest, and only for the reasons above given."

The said Clara W. Wertheim, the life beneficiary of the share of the residuary estate here in question, died without issue on the 15th day of August, 1903, 2 years, 10 months and 14 days after the death of the said testator, and 2 months and 20 days before the said payment of tax. On April 4, 1904, a petition was filed by the executors, asking to have $26,637.59, of the total amount paid by them, refunded. This petition did not embrace the taxes, for which recovery is sought in this suit, but only such part as had been in dispute between the executors and the commissioner before the assessment on the so-called residuary life estate was made. The claim made under the foregoing petition was subsequently on April 11, 1905, allowed to the extent of $13,-983.36. Almost immediately thereafter, and before payment to the executors of the amount of such allowance, the plaintiff in error was notified by them that they intended to file a further petition, asking that another portion of the taxes paid be refunded. This notification was given, in order that the department might withhold, if it cared to, the rebate allowed under the first petition, until the second petition could be filed and its merits determined. Such a petition was subsequently filed, on May 15, 1905, for the return of $37,673.13, with interest, being the overpaid tax in suit herein. There was considerable correspondence between the counsel of the executors and the department, with reference to the subject-matter of this second claim, but it was later altogether disallowed, and this suit was thereupon instituted.

Upon this state of facts, the plaintiff in error makes in this court two contentions:

First. That the payment of the tax in question, assessed upon the interest of Mrs. Wertheim in the residuary estate of her father, though made under protest, was not involuntary, and therefore no recovery can be had.

Second. That, notwithstanding Mrs. Wertheim's death prior to the assessment of the tax upon her interest, as aforesaid, said tax was properly assessed as on the value of the life estate, computed from the date of the death of the testator by the life tables adopted and used for that purpose by the Department of Internal Revenue.

In support of the first contention, counsel for plaintiff in error cites a number of decisions of the Supreme Court, from which the proposition is sought to be deduced that, in addition to the protest, there must be disclosed something like actual duress, under which the payment sought to be refunded is made, as, where duties are paid in order to obtain possession of the goods held in the custody of a collector of customs. Undoubtedly in such cases, and especially where the goods are perishable, the owner or claimant is compelled to pay the duties, in order to obtain possession of his property and avoid the loss incident to its detention. But these are not the only cases in which payment under protest will support an action for a refunding of money paid. Every demand by one clothed with official legal authority to make the demand, imposes a certain compulsion on the one upon whom the demand is made. Such a demand is always exigent and places a recusant in a position of disadvantage. Especially is this so in regard to the payment of taxes, state or national. The proper administration of the fiscal affairs of the government, require that the payment of taxes should not be delayed by disputes as to their legality, but that the taxes should first be paid and all questions in regard to them be determined in suits brought for their refunding. It is a wise policy, therefore, that encourages the payment under protest of disputed taxes. Though there is some conflict in the dicta of the Supreme Court, we think that the true doctrine is that, when taxes are paid under protest that they are being illegally exacted, or with notice that the payor contends that they are illegal and intends to institute suit to compel their repayment, a sufficient foundation for such a suit has been established. Chesebrough v. U. S., 192 U. S. 253, 24 Sup. Ct. 262, 42 L. Ed. 432; City of Phila. v. Collector, 5 Wall. 720, 731, 18 L. Ed. 614.

In the case at bar, however, there was more than the simple payment of the tax under protest as to its illegality, as it was paid upon the demand of the collector, coupled with a threat that unless promptly paid, the same would be collected with a penalty and interest at 1 per centum per month. Payment made upon such a demand from a government official, acting within the general scope of his authority, constituted such a duress as clearly made such payment involuntary. This view disposes of the question, without reference to the consideration upon which the learned judge of the court below properly enough, if we assume his finding of fact in that respect to be correct, based his opinion, viz., that there was not that full knowledge of all the facts and circumstances of the case as would make the payment voluntary, in that the fact of the death of the life tenant before the assessment was made was not known to the plaintiffs below.

We come now to the more important question, as to the valuation made by the plaintiff in error of Mrs. Wertheim's beneficial interest in her father's residuary estate. As appears from that part of the will recited above, the testator's whole residuary estate, real and personal, was given to trustees, and the survivor of them to divide, set apart and hold the same in as many equal portions or shares as he should leave daughters to survive him, and to invest and keep invested the personal estate and proceeds of real estate, if sold, of each share, and "to collect and receive the rents, issues and income of the portion or share so to

be set apart for each of my said daughters, and to apply the same to her use so long as she shall live, free from any control of her husband." No question is made in this respect, and it is therefore assumed that Mrs. Wertheim, under this provision of her father's will, had a beneficial life interest in the corpus of the fund or estate, the income of which she was to enjoy during her life. The pertinent portions of sections 29 and 30 of the war revenue act of 1898, are as follows:

"Sec. 29. That any person or persons having in charge or trust, as administrators, executors, or trustees, any legacies or distributive shares arising from personal property, where the whole amount of such personal property as aforesaid shall exceed the sum of ten thousand dollars in actual value, passing, after the passage of this act, from any person possessed of such property, either by will or by the intestate laws of any state or territory, or any personal property or interest therein, transferred by deed, grant, bargain, sale, or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainer, to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, shall be, and hereby are, made subject to a duty or tax, to be paid to the United States, as follows— that is to say," etc.

"Sec. 30. That the tax or duty aforesaid shall be due and payable in one year after the death of the testator, and shall be a lien and charge upon the property of every person who may die as aforesaid for twenty years, or until the same shall, within that period, be fully paid to and discharged by the United States; and every executor, administrator, or trustee having in charge or trust any legacy or distributive share, as aforesaid, shall give notice thereof, in writing, to the collector or deputy collector of the district where the deceased grantor or bargainer last resided within thirty days after he shall have taken charge of such trust, and every executor, administrator, or trustee, before payment and distribution to the legatees, or any parties entitled to beneficial interest therein, shall pay to the collector or deputy collector of the district of which the deceased person was a resident, or in which the property was located in case of nonresidents, the amount of the duty or tax assessed upon such legacy or distributive share, and shall also make and render to the said collector or deputy collector a schedule, list, or statement, in duplicate, of the amount of such legacy or distributive share, together with the amount of duty which has accrued, or shall accrue, thereon, verified by his oath or affirmation, to be administered and certified thereon by some magistrate or officer having lawful power to administer such oaths, in such form and manner as may be prescribed by the Commissioner of Internal Revenue, which schedule, list, or statement shall contain the names of each and every person entitled to any beneficial interest therein, together with the clear value of such interest, the duplicate of which schedule, list, or statement shall be by him immediately delivered, and the tax thereon paid to such collector," etc.

It will be remembered that a return was made by the executors, pursuant to the requirement of section 30 of the said war revenue act, and filed with the plaintiff in error, as internal revenue collector, May 19, 1903. The executors had qualified as such under the will of the testator, November 7, 1900, and this return, therefore, was filed about 2½ years thereafter. As the estate was large, presumably the interval was occupied in reducing it into possession, so as to be able to ascertain the amount of the residuary estate, in the income of which the daughters were interested. At all events, no demand seems to have been made upon them in this interval, and they certainly have not disobeyed the injunction of the statute, that no payment or distribution to legatees or parties entitled to a beneficial interest should be made before payment of the tax to the collector. As we have seen, the return of May, 1903, was not satisfactory, and resulted in a correspondence and personal in-

terviews between the attorneys for the executors and the officers of the Revenue Department, extending over two or three months. It is not denied that no assessment was made of the tax to be collected on Mrs. Wertheim's interest until about October 26, 1903, or at least two months after her death, when the demand was made from the executors for a sum which included a tax upon what was claimed to be the value of Mrs. Wertheim's life interest in the residuary estate under her father's will.

The inventoried amount of one-half of said residuary estate being returned as $2,647,768.97, the Commissioner of Internal Revenue assessed the clear value of the life interest, as computed under the life tables, to be $1,870,367.08, upon which the tax prescribed by section 29 of the said revenue act was at the rate of $2.25 per hundred, and amounted to the sum of $42,081.91, and this was the sum which was paid by the executors under protest November 4, 1903. No method of assessing the value of such a life interest is prescribed by the statute of 1898. It is claimed, however, by the Commissioner of Internal Revenue, that, inasmuch as section 31 of the act makes all administrative, special or stamp provisions of law, including the laws in relation to the assessment of taxes not theretofore specifically repealed, applicable to said act, the Commissioner, under section 3447 of the Revised Statutes [U. S. Comp. St. 1901, p. 2277], has the right to prescribe the mode of assessing taxes, and that under this authority mortuary tables may be resorted to, for the purpose of ascertaining the present value of a life estate. We may assume for present purposes that this contention on behalf of the plaintiff in error, is correct, but it does not follow that such tables can be resorted to or used to ascertain a life expectancy, when the period of that life has already been determined. No implication of authority for such a practice, can be derived from the statute, nor from any necessity which may exist in the case of a life still continuing. It is true, that when resort is had to such tables to assess the value of a life interest of a beneficiary still in being, it may happen that such life terminates after such assessment and payment of the tax, at a time far within the expectancy fixed by the life tables. Such hardships cannot be avoided, but at the date the assessment in this case was made, the life in question had already determined, and its precise duration as a basis of valuation was fixed. This fact could not be ignored whenever brought to the attention of the proper taxing authorities, and the fact that it was not known at the time of the assessment, cannot alter the requirements of the situation.

The contention is made that, inasmuch as the statute provides that the tax shall be due and payable in one year after the death of the testator, and shall be a lien upon all his property from that date, the tax, whenever imposed, relates to that time. Upon this point, we cannot do better than quote from the opinion of the learned trial judge:

"The defendant contends that the interest of the deceased in the estate was subject to the tax from the time of the death of the testator, and that whenever imposed the tax related back to that time; nevertheless the clear value of each interest had to be ascertained, and as the interest to be assessed in this case was a life interest, and its value depended upon the duration of a life, such duration had to be determined, and it was just here that the mistake

was made: it would hardly be pretended in reason, that if the life tenant had died the day after her father, that a tax, the amount of which had been thereafter determined by the use of mortality tables, would be legal even though it be admitted that such tax rightly imposed would relate back to the death of the parent. The duration of life in the case supposed, would have been determined and the value of the life interest ascertained by its known duration. Each interest liable to taxation must be valued independently. Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969. As already said, life tables are not the best evidence or conclusive evidence, their use is only justified when no better evidence is obtainable. Cases somewhat similar to the one at bar, but arising previously thereto, were brought to the attention of the court by counsel, from which it appeared that the Commissioner of Internal Revenue had in such cases granted like relief to that sought in this case; but when the facts in this case were brought to his attention for review, his reply was that the cases above referred to were either erroneous, or had been overruled, presumably by himself."

The reasoning contained in the opinion of the learned trial judge is clear and convincing, and fully supports the conclusion reached by him, that the value of Mrs. Wertheim's life interest in the residuary estate of her father, should be based upon the actual duration of her life, and not upon a fictitious duration derived from the life tables.

The judgment of the court below is affirmed, subject to the correction of errors, if any, in mere calculation on the basis hereby approved.