## H. RAYMOND HORN v. CITY OF MINNEAPOLIS AND OTHERS.[1]

December 26, 1930.

No. 28,166.

*Shearer, Byard & Trogner,* for appellant.

*Thompson, Hessian & Fletcher* and *John J. McKasy,* for respondents.

Wilson, C. J.

Plaintiff appealed from a judgment.

In 1889 plaintiff's grantor conveyed certain lands in the city of Minneapolis to the city for park and parkway purposes.   A portion of the consideration was paid by exempting plaintiff's land adjacent

[1]Reported in 234 N. W. 289.

to the lands conveyed from assessments to the extent of $48,000. The lands conveyed became a part of Minnehaha Parkway, which then reached from Lake Harriet to Lyndale avenue.

In 1921 Lynnhurst Field, in the neighborhood of plaintiff's property, was acquired, and plaintiff's property was assessed therefor in the sum of $3,192.30, of which plaintiff paid $1,265.91.

In 1922-1923 Minnehaha Parkway was improved and extended from Lyndale avenue to Minnehaha Falls, and plaintiff's property was assessed $3,050.50, of which he has paid $830.40.

In 1926 Lynnhurst Field was improved at a cost of about $100,000, and plaintiff's property was assessed in the sum of $5,969.

On May 18, 1927, that portion of the assessment for $3,050.50 remaining unpaid for the improvement on Minnehaha Parkway was annulled by the city authorities because of the holding of this court in Hunter v. City of Minneapolis, 171 Minn. 309, 213 N. W. 916.

This action is to recover money paid upon its assessments as hereinbefore mentioned and to cancel the assessments. The trial court denied plaintiff any relief except judgment for $107.88, being a portion of the assessment for Minnehaha Parkway paid involuntarily by plaintiff in order to record deeds.

█ Such a provision for exemption from assessments means that the consideration is to the extent named not to be paid in money but by a surrender of the right to assess to that extent. It is helpful to the city in that it does not have to raise the cash. Cases of this character have heretofore been before this court. State ex rel. City of Minneapolis v. District Court, 83 Minn. 170, 86 N. W. 15; In re Improvement of Lake of the Isles Park [Murray] 152 Minn. 29, 188 N. W. 54; In re Improvement of Lake of the Isles Park [Ueland] 152 Minn. 39, 188 N. W. 59; McCullough v. Board of Park Commrs. 157 Minn. 278, 195 N. W. 1013; In re Improvement of Calhoun Blvd. 167 Minn. 251 and 258, 259, 208 N. W. 1000, 209 N. W. 939; In re Improvement of Minnehaha Pkwy. 167 Minn. 253 and 258, 208 N. W. 998, 209 N. W. 939; Hunter v. City of Minneapolis, 171 Minn. 309, 213 N. W. 916.

In the deed and as a part of the consideration therefor the city agreed: To open, construct, and forever maintain a park or park-

way and boulevard upon both sides of and abutting upon Minnehaha Creek; to have a roadway on each side of the creek 40 feet wide; to construct and maintain a bridge across the creek at Humboldt avenue; to locate a driveway on said parkway by October 1, 1889; and to complete the project by October 1, 1890. There were certain restrictions not here important.

Paragraphs 10 and 11 of the deed read:

[10] "That the lands now owned by said Butler, and known as Butler's Brookside Addition, hereinbefore mentioned and the whole thereof and the northeast quarter of the southwest quarter of Section 16, Township 28, Range 24, which lies adjacent to the land herein granted on the West, shall be exempt from all special taxes and assessments for benefits for parkway purposes until such exemptions shall amount to the consideration hereinbefore specified, to-wit:

[11] "The sum of Forty-eight thousand ($48,000) Dollars. And it is agreed that the amount of such exemptions shall be determined in the following manner; whenever appraisers shall be appointed for the assessment of benefits for park or parkways, or park improvements they shall determine and specify the amount, if any, to which said exempted lands would be liable, and which would be assessed thereon if such exemptions had not been made, and the amount of assessment so determined shall in the amount confirmed by the Court under and pursuant to final order of confirmation be final and conclusive between the parties hereto, as to the amount of exemption under this agreement, and from time to time as made and confirmed deducted from said $48,000 until consumed, before the lands herein exempted from said assessments and taxes shall be liable for taxes or assessments for benefits for park or parkway purposes."

None of the parties to the transaction are now alive, so we must put ourselves so far as possible in the position of the parties and construe the language used to ascertain the extent of the exemptions which the parties had in mind. Paragraph 10, which creates the exemption, uses the word "parkway" only. Another deed of the

same character, dated the same day but given by one Fogg to the city, was almost in the same terms; but in paragraph 10 therein the words "park and parkway" were used.

We are not convinced that the parties then visioned the million dollar extension of Minnehaha Parkway to Minnehaha Falls. Their project was then a comparatively small one. Plaintiff's assessment thereon was $3,192.30. It is difficult to see how the parties could anticipate the eventual payment of the $48,000 by assessments solely to be applied to this project, which was the only one mentioned in the deed. There were no other parkways near the land conveyed. There are no others now. This particular parkway was by the terms of the deed to be completed by October 1, 1890. It was therefore impossible to absorb the $48,000 for assessments on the land of the grantor alone.

In order to construe paragraph 10 we must look to the whole instrument. Paragraph 11 commands attention. The city claims that parks are not included because not mentioned in paragraph 10; but why did the parties use "parks" and "park improvements" in paragraph 11? Why provide that the appraisers "shall determine and specify the amount, if any, to which said exempted lands would be liable" when "parks" and "park improvements" are involved? Why deduct "from said $48,000 until consumed before the lands * * * shall be liable for taxes or assessments for benefits for park or parkway purposes"? The language is plain. It must have reference to the determination of assessments chargeable against the $48,000. In one portion of the paragraph the words "park improvements" are used wholly disconnected from "parkways." Why would the parties intend to limit such a large exemption to "parkways"? There was as much reason to include parks as parkways, and no good reason appears why the parties should exclude the one and include the other. It was natural for the grantor to prefer to include both. The city consented to such in the Fogg deed. Why would it not make the same agreement in this deed? We are constrained to believe that the city intended to have the same situation in both deeds. To construe the deed as the city contends would apparently enable it to evade an obligation which we are sure it

would not wish to do. But to construe the deed other than we do would leave little opportunity for the absorption of the $48,000. We think the city intended to deal with plaintiff's grantor the same as it did with Mr. Fogg, and that the omission of the word "park" in the tenth paragraph was an inadvertence.

In giving effect to the general meaning of a writing particular words are sometimes supplied. 2 Williston, Contracts, p. 1199.

"If the recitals are clear [declaration of exemption] and the operative part [method of applying] is ambiguous, the recitals govern the construction." Vice versa the operative part prevails. "If both the recitals and the operative part are clear, but they are inconsistent with each other, the operative part is to be preferred." Ex parte Dawes, L. R. [17 Q. B. D.] 275, 286, approved in Williams v. Barkley, 165 N. Y. 48, 57, 58 N. E. 765.

Any other construction would make much of paragraph 11 meaningless. We reach the conclusion that the exemption is applicable not only to parkway assessments but also assessments for parks and park improvements.

■ Lynnhurst Field is a playground. Parks are primarily for recreation—refreshment of the strength and spirits. Some may get relaxation and be recreated by physical exercise in play, while others are equally helped by the beautiful. A playground as here involved means in a practical sense a piece of park property used almost exclusively for the purpose of playground activities. There is no law authorizing the city to establish playgrounds as such. They are created and maintained under the authority to acquire and maintain parks. The difference between the ordinary park and a playground is of degree only. The term playground is embraced within the word parks. See Booth v. City of Minneapolis, 163 Minn. 223, 203 N. W. 625; Caulfield v. Berwick, 27 Cal. App. 493, 150 P. 646.

■ Since plaintiff was not liable for the assessments, the question now arises as to his right to recover the partial payments made by him.

Taxes voluntarily paid cannot be recovered. Oakland Cemetery Assn. v. County of Ramsey, 98 Minn. 404, 108 N. W. 857, 109 N. W. 237, 116 A. S. R. 377; Braddock I. Min. Co. v. Erskine, 155 Minn. 70, 192 N. W. 193; Hunter v. City of Minneapolis, 171 Minn. 309, 213 N. W. 916. Mere protest is not sufficient. The element of coercion must be present. One who by force of statute is unable to place on record a deed may pay taxes under protest and recover them in a subsequent action.

The rule is that where an illegal demand is made upon a person, and the law furnishes him adequate protection against it, or gives him an adequate remedy in the premises, if he pays what is demanded instead of taking the protection the law gives him or the remedy which it furnishes, he must be held to have made a voluntary payment. But although there be a legal remedy, if his situation or the situation of his property is such that the legal remedy would not be adequate to protect him from irreparable prejudice, and the circumstances are such as to operate as a stress or coercion upon him to comply with the illegal demand, the payment is involuntary. DeGraff v. County of Ramsey, 46 Minn. 319, 48 N. W. 1135. The authorities are discussed in Joannin v. Ogilvie, 49 Minn. 564, 52 N. W. 217, 16 L. R. A. 376, 32 A. S. R. 581, which plaintiff urges should control here. But in that case the person paying an illegal demand could not consummate a mortgage loan and was subjected to pressure and possibly loss from both sides.

In this case plaintiff claims he made the payments in fear that mortgages on his land might be foreclosed for nonpayment of taxes. There was no threat so to do. The mortgagees did not even communicate with or talk to the plaintiff. It also appears that plaintiff made his payments covering a period of about 18 months without any attempt legally to establish his present claims. Equity was ready, willing, and able to help him. He did not invoke its aid. We are of the opinion that the evidence is insufficient to establish that degree of coercion necessary to constitute an involuntary payment. We cannot see that there was ever a time when plaintiff faced any immediate danger of irreparable prejudice, nor can we see that the circumstances were such as to operate as a coercion

upon him to comply with the illegal demand. We are forced to the conclusion that the payments were voluntary. The federal rule may be more favorable to the one who pays taxes under protest. Herold v. Kahn (C. C. A.) 159 F. 608, 612.

Plaintiff is entitled to judgment for the $107.88, plus the $102.25 included in the amended findings, all of which were paid to record deeds.

Reversed with directions to enter judgment according to the conclusions stated.