GEORGE KRONSCHNABEL v. CITY OF ST. PAUL.
THE LUTHERAN CHURCH-MISSOURI SYNOD, INTERVENOR.

137 N. W. (2d) 200.

September 10, 1965—Nos. 39,580, 39,581.

*Joseph J. Dudley, Dudley, Baird, Smith & Copeland, Richard E. Kyle, Richard H. Kyle,* and *Briggs & Morgan,* for appellant intervenor.

*Stephen L. Maxwell,* Corporation Counsel, and *Richard J. Battis,* Assistant Corporation Counsel, for appellant city.

*Firestone, Fink, Krawetz, Miley & O'Neill* and *James P. Miley,* for respondent.

*Joseph E. Richardson,* amicus curiae.

MURPHY, JUSTICE.

This is an appeal from a judgment in a taxpayer's action against the city of St. Paul permanently enjoining the city from transferring certain property to the intervenor for use of Concordia College. The city and the intervenor, as appellants, contend that the trial court was in error in determining that the property was held by the city for governmental purposes and could not be transferred without legislative approval.

The facts in the case are not in dispute. The property in question was transferred to the city of St. Paul by deed from the State of Minnesota on October 10, 1912. It consists of an area of about seven city blocks and is the site of Central High School and Dunning Field. The campus of Concordia College adjoins Dunning Field. Its property is part of an area of about three city blocks purchased in 1917 for the college site. The college, which was established in 1893, has acquired other adjacent lands so that prior to 1961 it had approximately 29 acres of land upon which its buildings and grounds were located. On the latter date, however, a part of the college property was lost as a result of proceedings to condemn land for the construction of an interstate freeway. This land had been used as an athletic field. The college entered into negotiations with the city to acquire part of Dunning Field to replace the property it had

lost. As a result of these negotiations, the city agreed to sell approximately 4.03 acres to the college. The sale was duly authorized by resolution of the city council. It is conceded that the consideration for the sale was fair and adequate. After this action was taken by the city council, a taxpayer brought these proceedings to enjoin the sale.

In determining the authority of the city to make a valid conveyance of the property in question, it is necessary to examine the nature of the city's interest and the estate in the land. The property was originally land on which a state reform school was located. Later the school was moved to Red Wing. Thereafter, by legislative authority (L. 1889, c. 155), the property was platted as the D. W. Ingersoll addition. This addition consisted of 13 blocks each divided into lots with the exception of block 8, which apparently was the site of the buildings on which the old reform school was located. After the land was platted, the city sought to acquire it for school and playground purposes. In 1911 the legislature enacted chapter 163, which authorized the governor and auditor to sell and convey to the city of St. Paul a part of the addition for educational and playground purposes. L. 1911, c. 163, § 1, provides:

"That the governor and auditor of the State of Minnesota are hereby empowered, authorized and directed to sell and convey to the city of St. Paul, in the county of Ramsey and State of Minnesota for educational purposes, and as a perpetual play ground for the children of said city, all the right, title and interest of the State of Minnesota in and to the following described land for the sum of seventy thousand dollars ($70,000) namely: blocks 1, 2, 5, 6, 7, 9 and 10 in D. W. Ingersoll's addition to the city of St. Paul, according to the accepted and recorded plat thereof on file in the office of the register of deeds of Ramsey county, and

"The governor and auditor are hereby authorized to execute and deliver to said city of St. Paul, hereby authorized to receive the same, a conveyance of the above described lots and parcels of land upon the payment to the state treasurer of the aforesaid purchase price thereof in cash or its equivalent; or at the option of said city, upon the delivery to said state treasurer of the bonds of said city, due in five years from the date of issue, bearing interest at the rate of four per cent per annum,

payable to the said State of Minnesota in such denominations as may be deemed practicable by said governor and auditor."

The dominant and overriding fact of this controversy is that the legislative act expressly provides that the property is to be transferred to the city of St. Paul "for educational purposes, and as a perpetual playground for the children of said city." Appellants would ignore the expressed governmental purpose for which the property was transferred to the city and proceed on the assumption that the city has acquired the property in its proprietary capacity, and that the transfer should be considered as one between separate and distinct entities. They contend that since a valuable consideration was given for the property, the purpose expressed in the act could neither create a condition subsequent nor determinable fee, the breach of which would result in forfeiture, and that accordingly, the city has acquired fee simple title free of any restrictions. Appellants rely on statements contained in the following authorities: 19 Am. Jur., Estates, § 71; Annotation, 15 A. L. R. (2d) 975; Restatement, Property, § 44; Loomis v. City of Boston, 331 Mass. 129, 117 N. E. (2d) 539; Mission Covenant Church v. Nelson, 253 Minn. 230, 91 N. W. (2d) 440; Farnham v. Thompson, 34 Minn. 330, 26 N. W. 9; Soukup v. Topka, 54 Minn. 66, 55 N. W. 824; Flaten v. City of Moorhead, 51 Minn. 518, 53 N. W. 807, 19 L. R. A. 195.

We are not persuaded by the authorities upon which appellants rely. They relate to transactions between individuals and municipalities. No authority is cited which deals with a grant from a sovereign state to a municipality imposing governmental duties upon the municipal corporation. The rights of the city to the property in question are limited by the language of L. 1911, c. 163, which authorized the deed.

■ It is a commonplace observation that municipal corporations possess only such powers as are expressly enumerated by statute, or are implied as necessary in aid of those powers expressly granted, and those essential to the declared objects and purposes of the corporation. Since education is a duty and responsibility imposed upon the state (Minn. Const. art. 8, § 1),[1] and since playgrounds represent a public use, it can-

---

[1] Minn. Const. art. 8, § 1, provides: "The stability of a republican form of government depending mainly upon the intelligence of the people, it shall

not well be said that the city acquired this property in a proprietary capacity as it might acquire property used for the benefit of its citizens rather than for the general public.

Since the legislature has imposed a governmental purpose upon the use of the property, the city is not permitted to use it otherwise or re-delegate the use except by legislative authority. The nature of the city and state relationship is fully discussed in our decisions of Monaghan v. Armatage, 218 Minn. 108, 15 N. W. (2d) 241, and Town of Bridgie v. County of Koochiching, 227 Minn. 320, 35 N. W. (2d) 537. These authorities stand for the proposition that a municipal corporation holds property for public purposes subject to the paramount power of the legislature, whose creature it is. "The legal situation is no different from that where the state itself holds the property and subjects it to a different or greater use." 218 Minn. 114, 15 N. W. (2d) 244. Or, as stated in City of Clinton v. Cedar Rapids & Missouri River R. Co. 24 Iowa 455, 475, municipalities are "mere *tenants at will* of the legislature." Minneapolis St. Ry. Co. v. City of Minneapolis, 229 Minn. 502, 40 N. W. (2d) 353, appeal dismissed, 339 U. S. 907, 70 S. Ct. 574, 94 L. ed. 1335; State v. City of Hudson, 231 Minn. 127, 42 N. W. (2d) 546; Thomas v. Housing & Redevelopment Authority of Duluth, 234 Minn. 221, 48 N. W. (2d) 175; State v. Clarke Plumbing & Heating, Inc. 238 Minn. 192, 56 N. W. (2d) 667; State ex rel. Anoka Co. Committee v. M. A. C. 248 Minn. 134, 78 N. W. (2d) 722; John Wright & Associates, Inc. v. City of Red Wing, 254 Minn. 1, 93 N. W. (2d) 660; Village of Brooklyn Center v. Rippen, 255 Minn. 334, 96 N. W. (2d) 585; 13A Dunnell, Dig. (3 ed.) § 6548; Rhyne, Municipal Law, § 16-11. We must accordingly agree with the trial court that the property in question is held by the city for a governmental purpose and that the city must have legislative authority to transfer it. We share the views expressed by the trial court in its memorandum where it said:

"The Court is not unmindful of the worthy purpose served by Concordia College and similar private institutions in the field of education.

---

be the duty of the legislature to establish a general and uniform system of public schools." Muehring v. School Dist. No. 31, 224 Minn. 432, 28 N. W. (2d) 655.

Likewise, the Court is aware of the fact that Concordia College lost its athletic field through condemnation proceedings brought by the State and that it desires and has need for property to replace that which was lost. However, these facts cannot avoid the obligation of the City under the 1911 act and the 1912 deed."

■ It is next contended that a legal transfer of the property is permitted by L. 1947, c. 579, which authorizes a city of the first class to alienate park property to other uses. That law, so far as applicable here, provides:

"* * * any city of the first class now or hereafter having a population of not less than 250,000 and not more than 400,000 operating under a home-rule charter which contains a provision that lands acquired for park purposes shall not be alienated or diverted to other uses and shall remain forever parks and parkways, notwithstanding such provision in such charter the city council or other governing body of such city may sell, alienate, or divert to other uses parks and parkways or portions thereof, located in such city."

The act further provides that the proceeds from the sale of such parks or parkways "shall be used * * * only for the operation and maintenance of remaining parks and parkways or for the acquisition of new parks and parkways." It is the appellants' contention that the subject property is a park within the meaning of the foregoing statute. They rely on Booth v. City of Minneapolis, 163 Minn. 223, 203 N. W. 625; Horn v. City of Minneapolis, 182 Minn. 172, 234 N. W. 289; and Headley v. City of Northfield, 227 Minn. 458, 35 N. W. (2d) 606.

We agree with the trial court that it would not be reasonable to equate the terms "parks" and "parkways" as used in the 1947 act with the concept of property committed for use for educational purposes and for a perpetual playground within the purview of L. 1911, c. 163.[2] It seems

---

[2] The trial court thoroughly explored this point in a helpful memorandum, part of which follows: "* * * The Legislative Code of the City, Section 117.27, defines 'park' as public grounds and squares maintained as pleasure grounds and defines 'parkway' as thoroughfares and park approaches. Notwithstanding the foregoing definition of 'park', an examination of the Legis-

to us that the conditions in the deed that the property be used for "educational purposes and as a perpetual playground" became an insurmountable obstacle to the acceptance of the notion that the property is a "park" within the meaning of L. 1947, c. 579. There are innumerable definitions of the term "park." A California case, County of Los Angeles v. Dodge, 51 Cal. App. 492, 506, 197 P. 403, 409, in discussing the term "public park" said:

"* * * A playground and athletic field is not a park within the meaning of the prohibition enforced by the section. None of the many decisions throughout the country which we have discovered and in which the word 'park' is defined, apply that designation to a public playground. A number of these decisions adopt the definition of the Century Dic-

---

lative Code, Section 117, particularly 117.01 et seq. covering park regulations, indicates a concept of 'park' at considerable variance from a use for educational purposes and as a perpetual playground for the children of St. Paul. When the City, as indicated by the last whereas of the 1911 act, was desirous of purchasing the subject property, it did not, as far as the evidence shows, request it for a park or parkway, and neither did the 1912 deed mention park or parkway. The fact that the City handles the subject property through the Commissioner of Parks, Playgrounds and Public Buildings does not make the subject property a park. See Chapter XX of the City Charter. The fact that adults have used the subject property and that play is on an organized play schedule for adults at certain times and children have been excluded at times, does not alter the situation. If the subject property has been used for purposes other than those in the 1911 act and the 1912 deed at the instance of the City, it would be an unwarranted result if the City were permitted to benefit from its failure to comply with the obligation of the 1911 act and the 1912 deed. In a publication entitled 'Plan for Public Educational Recreational Facilities,' being Community Plan Report Number 9 prepared by the City Planning Board of St. Paul, Exhibit O, it is interesting to note that Dunning Field is not referred to as a park but rather as a city-operated athletic and playground facility. In a communication by the Commissioner of the Department of Parks and Recreation and Public Buildings, dated June 5, 1963 (Ex. 2), the statement is made that 'Presently Dunning Field serves primarily as a major athletic field for the City of St. Paul, minutely as a neighborhood playground.' The evidence before me is not sufficiently convincing that the subject property is a park as such term is used in the 1947 act."

tionary to the effect that 'a park is a piece of ground set apart and maintained for public use, and laid out in such a way as to afford pleasure to the eye as well as opportunity for open air recreation.' "

The term "parks" may include playgrounds but it does not necessarily follow that a playground is a park. Booth v. City of Minneapolis, 163 Minn. 223, 203 N. W. 625; Horn v. City of Minneapolis, 182 Minn. 172, 234 N. W. 289; Headley v. City of Northfield, 227 Minn. 458, 35 N. W. (2d) 606. It would seem that a park implies ornamental areas with grass, woods, shrubbery, and benches, and may include playing fields, tennis courts, such as Como Park. Dunning Field is a playground, the function and character of which is distinctly different. The trial court noted that in the report of the city planning board Dunning Field is referred to not "as a park but rather as a city-operated athletic and playground facility."

■ It is further contended by appellants that the city's title to the property has been relieved from the servitude of any condition or restriction expressed in the 1912 conveyance by the provisions of Minn. St. 541.023, the so-called Marketable Title Act. This point may be briefly disposed of by observing that on the view we accept the possession of the city is also that of the state, and since § 541.023, subd. 6, exempts persons in possession from the application of the Marketable Title Act, the provisions of the act do not apply.

Affirmed.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.