Les HAMILTON, Appellee,

v.

CITY OF URBANDALE, Iowa; E. J. Giovannetti, Mayor; Donald Brush, Councilman; James Vroman, Councilman; Wayne Brundage, Councilman; Willliam Courtney, Councilman; Jerry Pierce, Councilman, Appellants.

No. 63175.

Supreme Court of Iowa.

April 23, 1980.

John F. McKinney, Jr., and Lance A. Coppock of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellants.

Joseph L. Marks of Marks, Marks & Marks, Urbandale, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, REES, UHLENHOPP, and McGIVERIN, JJ.

REYNOLDSON, Chief Justice.

This controversy arises from Urbandale's asserted right to issue, without a special election, $250,000 in general obligation bonds to build four softball fields in a city park. Plaintiff Hamilton and other Urbandale residents and taxpayers filed objections at a public hearing before the city council, asserting Iowa statutes require such an election before issuance of bonds for that purpose. After these objections were overruled, Hamilton appealed to district court as permitted by section 384.25(2), The Code 1977. The district court reversed, finding the council had exceeded its statutory authority. Urbandale appeals to this court, and we affirm.

The project involved clearing, grubbing, excavation, grading, backfill, topsoil mixing, constructing a retaining wall and railing, and installing a sprinkler system, waterline and sanitary sewer for a "softball quadplex" in Urbandale's Walker Johnston Park.

Hamilton, appealing, sought a district court ruling that construction of the softball diamonds was a "general corporate purpose" as defined in section 384.24(4)(b), The Code (construction of recreation grounds), thus compelling a section 384.26 referendum and a sixty percent voter approval before the general obligation bonds could be issued. Urbandale's answer in district court asserted the bonds were to be issued for an "essential corporate purpose" under section 384.24(3)(o) ("The rehabilitation and improvement of parks already owned, including the removal, replacement and planting of trees thereon."), and therefore no special election was required. See § 384.25, The Code.

Both parties filed motions for summary judgment. In a February 2, 1979, "decree on appeal" granting Hamilton's motion, district court concluded that the softball quadplex was a "recreation ground," and consequently the bonds were for a "general corporate purpose." The court held Urbandale had exceeded its authority by not following statutory procedure to authorize issuance of the bonds.

Urbandale appealed to this court. Hamilton cross-appealed. Subsequently, Hamilton filed a motion to dismiss the appeal as moot, alleging Urbandale had proceeded with the project by utilizing funds not derived from bonds. We ordered this motion submitted with the appeal. We made a similar order with respect to Urbandale's motion to dismiss Hamilton's cross-appeal because his brief was not filed on time. Before discussing the merits, we dispose of these motions.

I. *Motion to dismiss the appeal.*

■ Hamilton's motion asserts the softball project has been completed and paid for with other city funds and the issue before us therefore is moot. In view of our disposition of this motion, we pass for now the question whether this issue can be

raised by thus supplementing the record made in district court. In any event, the city, while conceding these facts, asserts it intends to issue the bonds to replenish the city funds used to pay the project cost, and thus the controversy has not been mooted.

▪ A case is moot if it no longer presents a justiciable controversy because the issues involved have become academic or nonexistent. *Board of Directors v. Green*, 259 Iowa 1260, 1264, 147 N.W.2d 854, 856 (1967). It is apparent from the opposing contentions with respect to this motion that the issue is not merely academic. Further, the question is of substantial public interest and may likely recur in the future. *See City of Des Moines v. Public Employment Relations Board*, 275 N.W.2d 753, 758 (Iowa 1979); *Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564, 568 (Iowa 1976). We therefore overrule Hamilton's motion to dismiss this appeal.

II. *Motion to dismiss the cross-appeal.*

▪ Hamilton's cross-appeal was grounded on the theory that if the softball project was not a section 384.24(4)(b) "general corporate purpose," alternatively it was a combination of one or more general corporate purposes with one or more essential corporate purposes, thus requiring a special election to authorize the bonds, under the provisions of section 384.28, The Code. The same concept was urged in district court and submitted here as a division of Hamilton's responsive brief on the city's appeal. Hamilton may seek affirmance in this court on grounds rejected by district court as well as the ground which was accepted. *Howard v. Des Moines Register & Tribune Co.*, 283 N.W.2d 289, 291–92 (Iowa 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980).

The cross-appeal furnishes nothing additional which is helpful in deciding this matter. We therefore sustain the motion to dismiss it.

III. *The merits.*

The parties agree that if the softball quadplex was an "essential corporate pur-

pose" no validating special election was required; if it was a "general corporate purpose" the election requirement was statutorily invoked. *See Grove v. City of Des Moines*, 280 N.W.2d 378, 379–80 (Iowa 1979); §§ 384.25, .26, The Code.

▪ We are concerned here with statutes found in Division III, "General Obligation Bonds," of chapter 384, a portion of the massive legislation entitled "City Code of Iowa" which followed adoption of the municipal home rule amendment, Iowa Const. art. III, § 38A (as added by amend. 25 in 1968). *See* § 362.1, The Code. In construing these statutes together, *McGrory v. Board of Trustees of the Municipal Electric Utility*, 232 N.W.2d 262, 264 (Iowa 1975), we must determine and give effect to the intent of the legislature. *See Loras College v. Iowa Civil Rights Commission*, 285 N.W.2d 143, 147 (Iowa 1979). A statute must be read as a whole and given its plain and obvious meaning, a sensible and logical construction. *Id.* at 147–48; *Doe v. Ray*, 251 N.W.2d 496, 500 (Iowa 1977).

▪ An overview of the relevant provisions before us discloses those projects and activities within the section 384.24(3) definition of "essential corporate purpose" constitutes limited and restricted list, while the section 384.24(4) definition of "general corporate purpose," although containing a partial itemization, includes "[a]ny other facilities or improvements which are necessary for the operation of the city or the health and welfare of its citizens." § 384.24(4)(i), The Code. Thus we start from the premise that the legislature intended to restrict and limit those projects which could be financed by general obligation bonds issued without a special election.

Urbandale argues this project is governed by section 384.24(3)(*o*), The Code:

3. "Essential corporate purpose" means:

.    .    .    .    .

*o.* The rehabilitation and improvement of parks already owned, including the removal, replacement and planting of trees thereon.

Hamilton asserts this improvement falls within the section 384.24(4)(b) definition:

4. "General corporate purpose" means:

. . . . .

b. The acquisition, construction, reconstruction, enlargement, improvement, and equipping of community center houses, recreation grounds, recreation buildings, juvenile playgrounds, swimming pools, recreation centers, parks, and golf courses, and the acquisition of real estate therefor.

He finds further support for his position in the language of two other statutes. The first is section 384.24(4)(a):

4. "General corporate purpose" means:

a. The acquisition, construction, reconstruction, extension, improvement, and equipping of . . . *city enterprises* . . . , other than those which are essential corporate purposes.

(Emphasis supplied.) The second statute is section 384.24(2)(c):

2. *"City enterprise"* means any of the following, including the real estate, fixtures, equipment, accessories, appurtenances, and all property necessary or useful for the operation of any of the following:

. . . . .

c. *Recreational facilities* or recreational facilities systems, including, without limitation, real and personal property, water, buildings, improvements, and equipment useful and suitable for administering recreation programs, and also including without limitation, zoos, museums, and centers for art, drama, and music, as well as those programs more customarily identified with the term "recreation" such as public sports, games, pastimes, diversions, and amusement, on land or water, *whether or not such facilities are located in or as a part of any public park.*

(Emphasis supplied.) Hamilton contends the softball quadplex falls squarely within the "recreational facilities" concept. Consequently, he argues, it is a "city enterprise" and therefore a "general corporate purpose" if it is not among those activities itemized under the definition of "essential corporate purpose." The latter itemization makes no mention of recreational projects. The only provision the city can point to which supports its "essential corporate purpose" theory is the section 384.24(3)(o) reference to "rehabilitation and improvement of parks already owned, including the removal, replacement and planting of trees thereon." But the legislature in section 384.24(2)(c), above quoted, drew a distinction in this context between a general purpose "recreational facility" and a park ("whether or not such facilities are located in or as a part of any public park").

Narrowing our focus, we note the "essential corporate purpose" provision Urbandale relies on permits "improvement of parks already owned," but that provision is followed by the phrase "including the removal, replacement and planting of trees thereon." § 384.24(3)(o), The Code. General words in a statute which are followed by specific words take their meaning from the specific ones. 2A A. Sutherland, *Statutes and Statutory Construction* § 47.17 (4th ed. C. Sands 1973). *See also Wright v. State Board of Engineering Examiners*, 250 N.W.2d 412, 413 (Iowa 1977); *State v. Bauer*, 236 Iowa 1020, 1022, 20 N.W.2d 431, 432 (1945). Construction of a $250,000 athletic complex can hardly be equated with tree planting.

The city reasons that because essential purpose section 384.24(3)(o) refers to improvement of parks "already owned" and general purpose section 384.24(4)(b) also refers to the improvement of parks, the latter statute must refer to improvement of parks at the time of acquisition. The city thus concludes that because Walker Johnston Park was already owned, this project must be classified as an improvement to a park already owned under essential purpose section 384.24(3)(o) and no special election was required. Regardless of the reference to "parks" in both statutes, Urbandale's theory requires reading into section 384.24(4)(b)

language the legislature could have supplied had it so intended,[1] and is overly simplistic.

As Hamilton points out, a logical extension of the city's statutory analysis would permit construction of a "superdome" in an already-owned park, as a park "improvement," without a vote of the residents. In interpreting statutes, we seek to avoid interpretations which would produce such strained, impractical, or absurd results. *See Loras College*, 285 N.W.2d at 147. We think the city's proposed solution to the apparent statutory inconsistency is strained and we do not adopt it.

Nor do we agree with Urbandale that because these statutes may leave legislative intent in doubt the issue should be resolved in favor of the city's construction in keeping with the spirit of the home rule amendment, supplemented by sections 364.1 and 364.2, The Code. Interpretation of statutes remains a question of law which must be determined by the judiciary. *Loras College*, 285 N.W.2d at 147; *West Des Moines Education Association v. Public Employment Relations Board*, 266 N.W.2d 118, 124 (Iowa 1978). We agree the above constitutional and statutory provisions Urbandale relies on abrogated the "Dillon Rule" and expanded the range of permissible municipal activities. But such activities are limited to those "not inconsistent with the laws of the general assembly." Iowa Const. art. III, § 38A (municipal home rule) (as added by amend. 25 in 1968); § 364.1, The Code. Because the legislature has enacted controlling statutes in this area, it remains our duty to determine their meaning and the city's duty to conform to the enactments as thus construed.

We hold trial court rightly ruled that the softball quadplex was a section 384.24(4)(b) general corporate purpose recreation ground and an approving special election was required before general obligation bonds could be issued to pay for its cost. This holding is confined to a construction of the above provisions of the City Code of Iowa, and does not mean that for other purposes or in other contexts a softball field may not be considered a park, or a part of a park. *See Golf View Realty Co. v. City of Sioux City*, 222 Iowa 433, 440–41, 269 N.W. 451, 455–56 (1936); *Kronschnabel v. City of St. Paul*, 272 Minn. 256, 262–63, 137 N.W.2d 200, 204–05 (1965); *Roy v. City of Woonsocket*, 116 R.I. 745, 747–48, 360 A.2d 565, 566–67 (1976).

The decree entered below is affirmed.

AFFIRMED.

---

1. The legislature used such language elsewhere. *See* § 384.24(4)(d) ("improvement of dams at the time of acquisition"); § 384.- 24(4)(g) ("improvement of airports at the time of establishment").