## L. B. HILER AND OTHERS v. CITY OF EAST GRAND FORKS AND OTHERS.[1]

October 20, 1933.

No. 29,806.

Day & Matt, Vaule & Murphy, and W. J. Kirkwood, for appellants.

Edgar A. Massee and O'Brien & Sylvestre, for respondents.

LORING, Justice.

This was a suit for a mandatory injunction to compel the city of East Grand Forks and the defendants as its officers to hold a city election in November of 1933 under the provisions of L. 1895, p. 16, c. 8, and to enjoin them from proceeding under L. 1933, p. 224, c. 181. Plaintiffs claim that the last cited chapter is unconstitutional and void as special legislation and that the classification of cities therein provided is arbitrary and not uniform in its operation throughout the state. They have appealed to this court from orders

[1] Reported in 250 N. W. 579.

sustaining a demurrer to their complaint and denying their motion for a temporary writ of injunction.

East Grand Forks is a city of less than 3,500 inhabitants operating under L. 1895, p. 16, c. 8, which provides among other things that the city elections shall be held on the first Tuesday after the first Monday of November of every odd-numbered year. L. 1933, p. 224, c. 181, is entitled: "An act changing the time for the holding of the city elections in certain counties (sic) operating under Laws 1895, Chapter 8." The first section of the act provides:

"The regular city election in all cities in this state, operating under Laws 1895, Chapter 8 and having a population of less than 3,500 inhabitants, shall be held on the first Tuesday after the first Monday in November of each *even* numbered year."

Section 2 of the act provides that the present elective and appointive officers in those cities shall continue to hold their offices until January, 1935, and that there shall be no election in the year 1933.

There are five cities now operating under the 1895 law, three of them with a population of less than 3,500. There are also two other general laws under which cities in this state are now operating. One of these laws is L. 1870, p. 56, c. 31, as amended, under which five cities are operating, all five of which have less than 3,500 population. There are two cities in the state operating under L. 1921, p. 724, c. 462, and both of these have less than 3,500 inhabitants. All of these hold their elections either in November of the odd-numbered years or in April of every year. There are nine cities operating under special laws, and eight of these have less than 3,500 inhabitants. Their elections are held in January, March, or April. There are numerous cities of less than 3,500 inhabitants operating under home rule charters, the dates of whose elections are fixed at various times by their charters. The great number of home rule charters indicates in part, at least, the variety of the needs of the various communities and may indicate that the constitutional prohibition against special legislation in regard to cities was ill adapted to conditions as they then existed and perhaps still do exist in this state. At any rate, the home rule charter amendment to the

constitution (art. 4, § 36) followed a six-years' experience with the prohibition against special legislation regulating the affairs of cities and as a practical matter and within prescribed limitations restored to cities a means of obtaining charters specially adapted to local needs which, prior to the adoption of art. 4, § 33, of the constitution, as amended in 1892, had been obtainable by special law. Nevertheless a number of cities retain their old special charters or operate under the general laws, and the constitutional restraints against special legislation and arbitrary classification lie more heavily on these than on their neighbors who are under home rule charters which may be amended by the cities themselves within the prescribed limits. For instance, any such city with a home rule charter might change the date of its election by amendment to its charter without reference to the date of election in any other city. But in regard to cities operating under the general laws, the legislature must, in regulating their affairs, pay due heed to the constitutional provisions of art. 4, §§ 33 and 34, which are here invoked by the appellants. This court is ever reluctant to declare unconstitutional an act of the state legislature, and the question of classification is primarily for that body. To declare such an act unconstitutional on that ground we must find that that body could not reasonably and intelligently make the challenged classification. Gunderson v. Williams, 175 Minn. 316, 221 N. W. 231. And that body is presumed to have acted with knowledge of all the facts necessary to make an intelligent classification. State v. Phillips, 176 Minn. 472, 223 N. W. 912. It is no objection that the act may apply to but one or only a few municipalities if the classification is not arbitrary or special and applies generally and uniformly throughout the state and to all such as may subsequently come within the class. The legislature in passing this act was doubtless moved by the laudable purpose of achieving economy for the cities affected. No other motive or reason is asserted by the respondents, and we cannot conceive of any other. Therefore we must consider whether any distinction can be made for the purpose of classification, on the ground of economy, between cities of less than 3,500 inhabitants,

incorporated under L. 1895, p. 16, c. 8, and cities having the same population and in the same situation, but incorporated under other general laws.

"Not only must the law treat alike, under the same conditions, all who are brought within its influence, but in its classification it must bring within its influence all who are under the same conditions." State ex rel. Board of C. & C. H. Commrs. v. Cooley, 56 Minn. 540, 552, 58 N. W. 150, 154.

And such classification must be based upon substantial distinctions which make one class so different from another as to suggest the necessity of different legislation with respect to them. State ex rel. Board of C. & C. H. Commrs. v. Cooley, 56 Minn. 540, 58 N. W. 150. Had the act applied to all cities of less than 3,500 inhabitants operating under general laws, we might readily assume that the consideration of economy in such cities was properly paramount to considerations which might impel larger cities to require an election on city affairs to be held at a time other than the general election. But can we justify the exclusion of other cities operating under the general laws where economy is necessarily just as important and paramount as in cities operating under the 1895 law? We can see no substantial distinction as far as economy of holding elections is concerned between cities under the 1895 act and those under the other general acts. We leave out of consideration the cities under home rule charters because they may amend if they desire to. Likewise we do not consider cities under special charters, since the legislature is forbidden to amend special laws.

We have been referred to no provision in the 1870 or 1921 acts which might justly make a distinction in classification for purposes germane to the object of c. 181. As far as we can ascertain, there is no element which might be considered to overcome the importance of the economical consideration in those cities which is not of equal weight in cities which are under the 1895 law.

The respondents claim that c. 181 should be considered as only affecting an amendment to the 1895 law. Giving full force to that argument, we cannot see that a forbidden special application or

arbitrary classification can be accomplished by amendment to an existing law which could not be done by independent statute. In the case of Jensen v. Independent Sch. Dist. No. 412, 163 Minn. 412, 204 N. W. 49, this court had before it L. 1925, p. 41, c. 43, which in effect amended G. S. 1913, § 2715, now 1 Mason Minn. St. 1927, § 2798. The classification of counties according to population sought to be effected by the 1925 act was held bad as not germane to the purpose sought to be effected in regard to the subject matter of the act, which was the change of schoolhouse sites. While the opinion does not discuss the respondents' theory here, we nevertheless regard the case as supporting the doctrine which we here adhere to. Certainly the mere form of words cannot make it constitutional to achieve the purpose of a special act or to make an arbitrary classification.

We hold that L. 1933, p. 224, c. 181, is unconstitutional and void as in violation of art. 4, §§ 33, 34, of our constitution.

The orders appealed from are reversed.

*DEVANEY, Chief Justice,* took no part.