W. H. NICHOLS v. CITY OF EVELETH.[1]

January 27, 1939.

No. 31,928.

*M. F. Teplicky,* City Attorney, and *Philip M. Stone,* for appellant.
*Victor E. Essling* and *Galen E. Bush,* for respondent.

LORING, JUSTICE.

Plaintiff brought suit to recover his April, 1938, salary as a policeman in the defendant city. March 14, 1938, by a resolution of the police civil service commission of the city acting under L. 1935, c. 170 (3 Mason Minn. St. 1938 Supp. § 1828-16¾, *et seq.*), the plaintiff and four other policemen had been retired from active service to the pension roll, effective April 1, 1938. The plaintiff did not desire to accept retirement and sought recovery for his full salary upon the active list. The trial court found that c. 170 was unconstitutional on the ground that classification of cities of the fourth class having an assessed valuation of $8,000,000 or more was not germane to the subject matter of the police pension act; that the act was based upon present assessed valuation and population and that it keeps any city that may elect to come under its provisions within its classification regardless of its future change of status. Judgment was therefore entered in favor of the plaintiff for the entire sum asked, and the case comes here upon appeal by the city. The sole question presented is whether or not c. 170 is vulnerable to the attacks made upon its constitutionality by the plaintiff.

Plaintiff, who had been in the police service of the city since 1926, held his position under the police civil service law, L. 1929, c. 299 (3 Mason Minn. St. 1938 Supp. § 1933-48, *et seq.*) and could

not be removed or discharged after six months' continuous employment except for cause.

Chapter 170 is entitled: "An act relating to police pensions in cities of the fourth class having an assessed valuation of more than $8,000,000 exclusive of moneys and credits." It is not disputed that the city adopted appropriate resolutions accomplishing an acceptance of the act, § 5 of which gives the police civil service commission the right to insist upon the retirement of members of the force who have reached the age of 60 years. Plaintiff had reached that age prior to March 14, 1938, the date of the resolution adopted by the civil service commission retiring him to the pension role.

■ We are not in accord with the trial court's view that c. 170 is based upon present population and assessed valuation of cities of the fourth class as distinguished from those which may in the future come within its classification. In our opinion, the word "having" should be construed as if the phrase "now or hereafter having" had been used and the act applies to all cities which may subsequently come within the class described. State v. Ames, 91 Minn. 365, 98 N. W. 190, and State ex rel. Bd. of Education v. Brown, 97 Minn. 402, 106 N. W. 477, 5 L.R.A.(N.S.) 327.

■ Chapter 170, § 1, provides: "In the event any city shall at any time come under the terms of this act it shall continue thereunder notwithstanding any subsequent change in classification or valuation." In determining whether or not this provision invalidates the act we must take into consideration the fact that it is providing for a pension system which in the normal course of events, if it is to be effective at all, must continue for a long period of time. Normally, for practical reasons, young men are likely to be the ones selected for a police force and are likely to contribute for many years from their salaries before they become eligible to retirement and to a pension. Normally they may expect to draw that pension for a considerable period of years. Once started, a pension system would be of little value unless there were assurance of its permanency. To accomplish the purpose of the act at all it must be protected against the vicissitudes of changing conditions. We see no violation of the constitution in this provision.

3. We come now to the question of whether or not the classification provided by c. 170 is germane to the purposes of the act. As we said in Hiler v. City of East Grand Forks, 189 Minn. 618, 620, 250 N. W. 579, 580:

"This court is ever reluctant to declare unconstitutional an act of the state legislature, and the question of classification is primarily for that body. To declare such an act unconstitutional on that ground we must find that that body could not reasonably and intelligently make the challenged classification. * * * And that body is presumed to have acted with knowledge of all the facts necessary to make an intelligent classification. * * * It is no objection that the act may apply to but one or only a few municipalities if the classification is not arbitrary or special and applies generally and uniformly throughout the state and to all such as may subsequently come within the class."

In the case at bar we have no difficulty in seeing a relation between the assessed valuation and the practical ability of the city for an extended period to maintain a pension fund of this character. The constitution permits the classification of cities according to population into four classes. This does not mean that there may not be a constitutional classification within any one of those classes provided that the classification is not arbitrary or special and that it applies generally and uniformly throughout the state and to all such as may subsequently come or bring themselves within the plan. The act under consideration, in order to provide a sufficient fund, requires a levy for that purpose of $10,000 annually until the fund is built up to $50,000, and whenever it falls below that amount requires a levy to be again made. Obviously this would be a hardship upon cities of small population and low assessed valuation, and consequently the legislature empowered only those cities having an assessed valuation of $8,000,000 to bring themselves within the act. Hence we have a classification within the fourth class of cities based upon a population not exceeding 10,000 and an assessed valuation not less than $8,000,000. For convenience it may be said that the primary classification is that of population, the act being

applicable only to cities of the fourth class, and the secondary or modifying classification within that class is the qualification in regard to assessed valuation. In the wisdom of the legislature some other point of demarcation between cities of the fourth class which could afford and those which could not afford a retirement fund of this character might have been made, but the legislature exercised its wisdom in selecting $8,000,000 assessed valuation as the point of demarcation. It had to place that point somewhere, and we see nothing arbitrary or special in its action in placing it at the amount which it did. In matters of this kind the legislature has a wide field to deal with in cities of the fourth class because of the wide range of population within that class. In many matters there must be a secondary classification. In State v. Cloudy & Traverse, 159 Minn. 200, 198 N. W. 457, an attack was made upon the constitutionality of an act which applied only to St. Louis county by means of a classification based upon a minimum assessed valuation of $250,000,000 and an area in excess of 5,000 square miles. No limitation whatever was placed upon the bonded or other indebtedness of the county, and this court sustained the act.

In Driscoll v. County of Ramsey, 161 Minn. 494, 201 N. W. 945, there was before this court an act authorizing counties with an assessed valuation of not less than $125,000,000 and not more than $250,000,000 to acquire and improve bathing beaches, and this court held that there was no relation between assessed valuation alone and the necessity or propriety for recreation grounds, an entirely different objective, viewed from a financial standpoint, than a police retirement act. Moreover, the classification being based solely upon assessed valuation, the inclusion of those counties within the limits fixed by law and the exclusion of those counties with a greater assessed valuation was arbitrary and capricious and evinced a legislative purpose of evading provisions of the constitution. We see a clear distinction between the Driscoll case and the case at bar, and we think there is a justifiable relation between assessed valuation in cities of the fourth class and the propriety of establishing a retirement fund for a police force. As said above, the establishment of this fund requires but a small assessment compared to the as-

sessed value, and the establishment of the fund may be expected to extend over a period of years and its maintenance over a very long period. Such being the case, we do not think that the legislature can be charged with arbitrary action because it omitted from the classification any mention of bonded or other indebtedness of the city which might be expected to vary materially with the passage of the years.

We conclude that the statute is constitutional, and the judgment of the trial court must therefore be reversed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

