MART M. MONAGHAN v. MRS. MAUDE D. ARMATAGE
AND OTHERS.
MINNEAPOLIS-ST. PAUL METROPOLITAN AIRPORTS
COMMISSION, INTERVENER.[1, 2]

No. 33,884.

July 7, 1944.

[1]Reported in 15 N. W. (2d) 241.

[2]Appeal dismissed by United States Supreme Court February 13, 1945.

*Mart M. Monaghan,* for appellant.

*Paul J. Thompson* and *Abbott L. Fletcher,* for defendant-respondents other than Edward A. Chalgren, H. G. Knight, and Alfred F. Pillsbury.

*Oppenheimer, Hodgson, Brown, Donnelly & Baer,* for intervener-respondent.

LORING, CHIEF JUSTICE.

The plaintiff-appellant brought this suit to restrain the Minneapolis park board from transferring the possession and use of the municipal airport in that city to the Minneapolis-St. Paul Metropolitan Airports Commission created under authority of L. 1943, c. 500. That act is discussed in Erickson v. King, 218 Minn. 98, 15 N. W. (2d) 201. The commission intervened in support of the defendants' demurrer to the complaint on the ground that it did not state a cause of action.

In this case the contentions of the appellant are that L. 1943, c. 500, is special legislation in violation of Minn. Const. art. 4, §§ 33, 34, and that it attempts to take from the city of Minneapolis its property in the municipal airport without compensation, in violation of the due process clause of U. S. Const. Amend. XIV, as well as Minn. Const. art. 1, § 13, which forbids the taking of

private property for public use without just compensation.

■ Chapter 500, § 3, subd. 2, specifically provides:

"This act is expressly declared to be applicable to all such cities whether or not they are now or hereafter existing under a charter framed and adopted under Section 36 of Article IV. of the state constitution."

Obviously, it was intended by the legislature that the act should be general and not special legislation, and that it should operate generally and uniformly throughout the state. The fact that at present there is but one group of two contiguous cities of the first class to which it can be applied does not compel the conclusion that it is special legislation if the classification is not arbitrary or special, but applicable generally and uniformly throughout the state. Board of Education v. Borgen, 192 Minn. 367, 256 N. W. 894.

■ That a classification of airports for contiguous cities of the first class, as distinguished from single cities or noncontiguous ones, is justified as based on a substantial distinction is obvious from the necessity for unified control of the equipment of modern airport facilities such as radio beams and the like in such contiguous cities. Erickson v. King, 218 Minn. 98, 15 N. W. (2d) 201, *supra*. We think the classification is germane to the purpose of the law.

■ Appellant relies largely upon certain provisions of the act which he contends make the act impossible of application to any cities which in the future may become contiguous cities of the first class. For instance, § 4, subd. 1, providing for the membership of the commission thereby created, requires that one of such members shall be—

"* * * a member of the board of commissioners having jurisdiction *at the time of the passage of this act* of airports of each of the respective cities, * * *." (Italics supplied.)

Section 4, subd. 3, provides:

"*Within 30 days after the effective date of this act, the commis-*

*sioners shall be selected as provided in Subdivision 1 of this section.*"  (Italics supplied.)

Section 24 provides:

"This act shall take effect and be in force from and after July 6, 1943."

We seek the legislative intent in the light of other provisions in the act, and especially in the light of the avowed purpose to enact a general law which shall apply to municipalities which in the future shall become contiguous cities of the first class.  If a construction of the act or an application of it is tenable which achieves that purpose, it is our duty so to construe and apply the act.

The provisions cited by appellant are procedural and directory rather than substantive, and are intended to implement, not to modify, the substantive provisions setting up the governmental instrumentality.  The distinction between substantive provisions and those which are merely procedural and directory is clearly expounded in the opinion of the late Mr. Justice Stone, who spoke for this court in Bielke v. American Crystal Sugar Co. 206 Minn. 308, 312, *et seq.,* 288 N. W. 584, 586, *et seq.*  We need not repeat what is there said.  These procedural provisions are not of the essence of the act, and we hold that they do not rob it of its character as general as distinguished from special legislation.  We see no violation of Minn. Const. art. 4, §§ 33, 34.

We come now to the contention that the transfer of the use and possession of the municipal airport from the city park board to the commission is a taking without compensation.  For the reasons stated under paragraph 5 of this opinion, the taking is not the taking of private property in violation of Minn. Const. art. 1, § 13.

The remaining question is whether Minneapolis has such a proprietary interest in the airport that its use and possession cannot be taken without compensation by the state acting through the commission authorized by c. 500.  Is the city, as a state agency for the exercise of governmental powers, in a position to invoke the

Fourteenth Amendment as against the state itself or its agency duly created and empowered by the legislature to take over the possession and use of municipal property?

A municipality is merely a department of the state, a political subdivision created as a convenient agency for the exercise of such governmental powers as may be entrusted to it. City of Trenton v. New Jersey, 262 U. S. 182, 43 S. Ct. 534, 67 L. ed. 937, 29 A. L. R. 1471. Absent constitutional restriction, the legislature may at its pleasure modify or withdraw any powers so entrusted to a city, hold such powers itself, or vest them in other agencies. Hunter v. City of Pittsburgh, 207 U. S. 161, 178, 179, 28 S. Ct. 40, 46, 52 L. ed. 151, 159, cited with approval in City of Trenton v. New Jersey, *supra*.

Minn. Const. art. 4, § 36, specifically preserves the right in the legislature to provide general laws paramount to home-rule charters. See, State ex rel. Smith v. City of International Falls, 132 Minn. 298, 156 N. W. 249; State ex rel. Erickson v. Gram, 169 Minn. 69, 210 N. W. 616.

The United States Supreme Court, speaking through Mr. Justice Butler in City of Trenton v. New Jersey, *supra,* said (262 U. S. 188, 43 S. Ct. 537, 67 L. ed. 941):

"* * * This Court has never held that these subdivisions may invoke such restraints [the Fourteenth Amendment and the contract clause] upon the power of the State."

It further said in the same case (262 U. S. 189, 43 S. Ct. 537, 67 L. ed. 942), speaking of Town of East Hartford v. Hartford Bridge Co. 51 U. S. (10 How.) 511, 533, 534, 536, 13 L. ed. 518, 527-529:

"* * * The reasons given in the opinion (pp. 533, 534) support the contention of the State here made that the City cannot possess a contract with the State which may not be changed or regulated by state legislation."

The opinion in City of Trenton v. New Jersey, *supra,* quoted with approval the exposition of the principles now under consideration contained in Hunter v. City of Pittsburgh, 207 U. S. 161, 178,

179, 28 S. Ct. 40, 46, 52 L. ed. 151, 159, as follows (262 U. S. 186, 43 S. Ct. 536, 67 L. ed. 941):

"The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. . . . The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it."

And still further in the City of Trenton case, in speaking of the distinction made in tort cases between proprietary and governmental purposes, the court said (262 U. S. 192, 43 S. Ct. 538, 67 L. ed. 943):

"* * * But such distinction furnishes no ground for the application of constitutional restraints * * *. They do not apply as against the State in favor of its own municipalities."

A city holds its property for public purposes whether in furtherance of a proprietary or governmental purpose. It holds it subject to the paramount power of the legislature, whose creature it is. The answer to the question before us becomes simple in the light of a realization that the city is but a subdivision of the legislative

branch of government and always subject to the paramount power of the legislature, its creator. The legal situation is no different from that where the state itself holds the property and subjects it to a different or greater use.

In State ex rel. School District v. County Board, 126 Minn. 209, 212, 148 N. W. 53, 54, this court said:

"'* * * The case is controlled by the further rule that the legislature, having plenary control of the local municipality, of its creation, and of all its affairs, has the right to authorize or direct the expenditure of money in its treasury, though raised for a particular purpose, for any legitimate municipal purpose, or to order and direct a distribution thereof upon a division of the territory into separate municipalities. * * * The local municipality has no such vested right in or to its public funds, like that which the Constitution protects in the individual, as precludes legislative interference. People v. Power, 25 Ill. 187; State Board of Education v. City, 56 Miss. 518. As remarked by the supreme court of Maryland in Mayor v. Sehner, 37 Md. 180: 'It is of the essence of such a corporation, that the government has the sole right as trustee of the public interest, at its own good will and pleasure, to inspect, regulate, control and direct the corporation, its funds, and franchises.'"

We therefore hold that c. 500, in authorizing the transfer of the use and possession of the municipal airport to the commission without compensation to the city or to the park board, does not violate the Fourteenth Amendment to the Constitution of the United States.

Order affirmed.

UPON APPLICATION FOR REARGUMENT.

On July 28, 1944, the following opinion was filed:

PER CURIAM.

Appellant now challenges the constitutionality of c. 500 as contravening Minn. Const. art. 4, § 34, which provides that "all such laws shall be uniform in their operation throughout the state."

We find no lack of uniformity in the application of c. 500. It not only applies to all present and future contiguous cities of the first class but includes provisions for support of municipal airports which further the objectives of the act. Of course, if the appropriation made by the act is exhausted, the legislature may or may not enlarge it as it is advised, but so long as the appropriation is available it appears it is applicable uniformly throughout the state. The legislature need not provide at this time for all future commissions which may come under the law.

Nor do we see any violation of the Fourteenth Amendment to the federal constitution, since we see no infringement of the equal protection clause. All are treated alike who come within the act.

Petition denied.

