## TOWN OF BRIDGIE AND OTHERS v. COUNTY OF KOOCHICHING AND OTHERS.[1]

December 31, 1948.

No. 34,785.

---

[1]Reported in 35 N. W. (2d) 537.

*Aad A. Tone,* for appellants.

*L. P. Blomholm,* County Attorney, for respondents.

Thomas Gallagher, Justice.

Plaintiff towns in Koochiching county challenge the constitutionality of M. S. A. 368.47, whereunder they were dissolved by resolu-

tion of the board of county commissioners of defendant county of Koochiching. Section 368.47 in part provides:

"* * * when the assessed valuation of any town drops to less than $40,000, * * * the county board by resolution may declare any such town, naming it, duly dissolved and no longer entitled to exercise any of the powers or functions of a town. * * *

"When a town is dissolved under the provisions of sections 368.47 to 368.49 the county shall acquire title to any telephone company or any other business being conducted by such town and such business shall be operated by the board of county commissioners until such time as a sale thereof can be made; provided that the subscribers or patrons of such businesses shall have the first opportunity of purchase. If such dissolved town has any outstanding indebtedness chargeable to such business, the auditor of the county wherein such dissolved town is located shall levy a tax against the property situated in the dissolved town for the purpose of paying the indebtedness as it becomes due."

Section 368.49 provides for the disposal of road or bridge funds of any such dissolved town by the county board wholly within the limits of such town and for the crediting of any other funds to the general fund of the county.

Plaintiffs challenge the power of the legislature to enact the above legislation upon the grounds (1) that provision for dissolution of such towns *without* notice to or consent of the residents thereof is in excess of the legislative power and violative of the due process clause, Minn. Const. art. 1, § 7; (2) that the classification therein, based upon an assessed valuation of less than $40,000, is unfair and arbitrary and hence special legislation in contravention of Minn. Const. art. 4, §§ 33 and 34; and (3) that it constitutes an unlawful delegation of power from the legislature to the county board, in violation of Minn. Const. art. 3, § 1, providing for the separation of the legislative, executive, and judicial branches of the government.

From the trial court's order sustaining a demurrer to the complaint, which had attacked the constitutionality of the enactment, this appeal is taken.

■■■ We do not regard the challenged statute as in excess of the power of the legislature. As stated in State ex rel. Simpson v. City of Mankato, 117 Minn. 458, 463, 136 N. W. 264, 266, 41 L.R.A.(N.S.) 111:

"We must not forget that the voice of the legislature is the voice of the sovereign people, and that, subject only to such limitations as the people have seen fit to incorporate in their Constitution, the legislature is vested with the sovereign power of the people themselves. In other words, the provisions of a state Constitution do not and cannot confer upon the legislature any powers whatever, but are mere limitations in the strict sense of that term, and the legislature has all the powers of an absolute sovereign of which it has not been divested by the Constitution."

It has frequently been stated that municipal corporations have no rights, privileges, or immunities within the protection of the usual constitutional guaranties against legislative interference or control. They are merely governmental agencies, and legislation regulating or affecting them does not amount to a contract, the obligation of which may not be impaired by legislative action. 4 Dunnell, Dig. & Supp. § 6548. Our constitution, art. 11, § 3, gives to the legislature the power to create and establish towns; and the power thus to create implies the power to curtail. The powers of such townships are derived solely from the legislature, and they may be enlarged and extended or abridged and entirely withdrawn by legislative action. There is no constitutional restriction binding the legislature in this respect. 4 Dunnell, Dig. & Supp. § 6548, and cases cited.

■■ This rule is not altered by the fact that such a municipal corporation has been allowed to acquire property. Provision is made in the challenged statute for disposition thereof. The power of the legislature over the property which a municipal corporation has acquired in its public or governmental capacity and which is de-

voted to public or governmental uses is complete. It may take control thereof from the officers of the corporation and turn it over to other officers under the direct supervision and control of the state. There are no constitutional limitations or restrictions in this respect. Monaghan v. Armatage, 218 Minn. 108, 15 N. W. (2d) 241; 4 Dunnell, Dig. & Supp. § 6548.

■ As to property held in a proprietary or private capacity, in trust for the benefit of township inhabitants for certain designated purposes, the legislature may provide for the transfer thereof from the officers of such municipality to different trustees, with or without the consent of the municipality and without compensation to it. Monaghan v. Armatage, *supra*.

Based upon these well-established principles, we are compelled to hold that the legislature did not exceed its constitutional authority in the enactment of § 368.47.

■ Likewise, we are of the opinion that the legislative classification of towns with less than $40,000 in assessed valuation, for the purpose of the act, is not unfair and arbitrary so as to constitute a violation of Minn. Const. art. 4, §§ 33 and 34, prohibiting special legislation for counties, cities, villages, and towns. Our function with reference to this issue is merely to determine whether the classification provided for bears a reasonable relationship to the subject matter of the legislation. Classification is so much a question of policy that the legislature should be allowed a large measure of discretion in the matter. If the basis of classification is proper, the act is general although it operates on only one class of municipalities and makes no provision for those not falling within its classification. It must be based upon some natural, apparent reason of public policy growing out of the condition to which the legislation is limited.

Here, it is obvious that the purpose of the legislation is to prevent the expenditure of funds or the incurring of liabilities by townships lacking assessed valuations permitting them to raise funds therefor through legal taxation rates. When such circumstances appear, the county may, by resolution, dissolve the town and take over its

functions and provide for the necessary services. Likewise, it may become trustee for any property held by the township officers in trust for the inhabitants thereof for specific services, such as telephone exchanges and like matters. The assessed valuation bears a direct relationship to the subject matter of the legislation, *i. e.,* the dissolution of towns which, for financial reasons, may find it impossible to finance themselves. In Nichols v. City of Eveleth, 204 Minn. 352, 355, 283 N. W. 539, 541, where classification was based upon assessed valuation, we stated:

"In the case at bar we have no difficulty in seeing a relation between the assessed valuation and the practical ability of the city for an extended period to maintain a pension fund of this character. * * * Obviously this would be a hardship upon cities of small population and low assessed valuation, and consequently the legislature empowered only those cities having an assessed valuation of $8,000,000 to bring themselves within the act. * * * In the wisdom of the legislature some other point of demarcation between cities of the fourth class which could afford and those which could not afford a retirement fund of this character might have been made, but the legislature exercised its wisdom in selecting $8,000,000 assessed valuation as the point of demarcation. It had to place that point somewhere, and we see nothing arbitrary or special in its action in placing it at the amount which it did."

We hold here that the classification based upon assessed valuation bears a direct relationship to the objects of the legislation, and that it is not unfair or arbitrary so as to constitute a violation of Minn. Const. art. 4, §§ 33 and 34.

■ It is urged that the act, though otherwise within the power of the legislature, is violative of the provisions of Minn. Const. art. 3, § 1, providing for the separation of the three branches of the government, under which it has frequently been held that the legislature may not delegate its power to the executive or judicial departments of the government.

The law seems well established that this prohibition does not extend to a grant of power from the legislature to a division of the government likewise within the legislative department.

It is well settled that a legislature may delegate part of its power over local subjects to county boards and other public bodies within the legislative classification. 11 Am. Jur., Constitutional Law, § 223, citing Wright v. May, 127 Minn. 150, 149 N. W. 9, L. R. A. 1915B, 151, and Searle v. Yensen, 118 Neb. 835, 226 N. W. 464, 69 A. L. R. 257.

As stated in the Searle case (118 Neb. 842, 226 N. W. 466):

"The power of the legislature to delegate a part of its legislative functions to municipal corporations or other governmental subdivisions, boards, commissions, and tribunals, to be exercised within their respective jurisdictions, cannot be denied; but the recipient of such powers must be members of the same governmental department as that of the grantor."

In the Wright case this court stated (127 Minn. 155, 149 N. W. 11):

"The claim is made that the law is unconstitutional because it delegates legislative power to the county board or auditor. The argument is based upon the use of the word 'may.' It is contended that the statute grants to the county board and the auditor the absolute and arbitrary power to license or refuse to license as an auctioneer any voter who applies and pays the fee. It is probably true that there is some discretion in the licensing officer, but this does not amount to a delegation of legislative power. It is rather an administrative or executive function, and a delegation of such functions does not violate the constitutional provision. 1 Dunnell, Minn. Digest, § 1600, * * *."

As stated in 14 Am. Jur., Counties, § 30:

"* * * there is a well-settled rule that inhibitions against the delegation of legislative power do not apply to statutes vesting local bodies such as county boards with authority to legislate upon matters purely of local concern."

We find no constitutional prohibition here against the delegation of legislative powers to counties. Minn. Const. art. 11, § 1, provides that the legislature may from time to time establish and organize new counties. Section 4 of said article states:

"Provision shall be made by law for the election of such county or township officers as may be necessary."

And § 5 states:

"Any county and township organization shall have such powers of local taxation as may be prescribed by law."

There is nothing contained therein which denies to the legislature power to delegate to counties the capacity to act upon matters such as those here involved. It is obvious that the statute in question relates to matters of purely local concern. We hold that under the above authorities the legislature violated no constitutional restriction in delegating to counties the power to act in connection with the dissolution of towns falling below certain standards of classification.

The order is affirmed.