116 So.2d 233 (1959)
Dr. Delio COBO, as Mayor of the City of Key West, Bill G. Chappell, as governing body member of the Utility Board of the City of Key West and the City of Key West, Florida, Appellants,
v.
Horace O'BRYANT, Ernest A. Ramsey, and Benjamin N. Adams, Also known as Ben Adams, as and constituting the Citizen Members of the Utility Board of the City of Key West, Florida, Appellees.
CITY OF KEY WEST, Florida, Appellant,
v.
Agnes P. LOWE, as Assistant City Clerk, Appellee.
Supreme Court of Florida.
December 4, 1959.
*234 Hilary U. Albury, Key West, and Anderson & Nadeau, Miami, for appellants.
J. Lancelot Lester, M. Ignatius Lester, Key West, W.G. Ward, Miami, and Weldon G. Starry, Tallahassee, for appellees.
THORNAL, Justice.
The appellants in each of the above styled cases seek reversal of separate decrees of the Chancellor affirming the validity of certain acts of the Legislature regulating aspects of the government of the City of Key West.
Numerous points are assigned for consideration, however, the determining aspects of the problem are whether a Florida municipality is endowed with powers of local self-government, and, the extent of legislative control over the operation and management of property owned by a municipality in a proprietary capacity.
In Cobo et al., v. O'Bryant et al., hereafter referred to as the Utility Board case, the appellants, as plaintiffs in the lower court, sought an adjudication of the invalidity of Chapter 27650, Laws of 1951, Chapter 29201, Laws of 1953, and House Bills 1054, 1055 and 1056, of the Acts of the 1959 Legislature.
By virtue of Chapter 23373, Laws of 1945, the City of Key West owned and operated an electric utility system. The act established a utility board to operate the system. The board consisted of the Mayor, a second member called the "governing board member" designated by the City Council, and three citizen members to be appointed by the Mayor. Chapter 27650, Laws of 1951 changed the arrangement by providing that the citizen members of the board could appoint their own successors. Chapter 29201, Laws of 1953, provided that the citizen members would be subject to removal by a majority of such members on the board. House Bill 1054, Acts of 1959, abolished the office of "governing board member" and created an additional citizen member. House Bill 1055, supra, provided that citizen members would be eligible for reappointment but excluded from eligibility any elective officer of the city until at least one year after the expiration of his elective term. House Bill 1056, supra, conferred upon the Utility Board exclusive management and control of the utility system including the fixing of rates and issuance of bonds.
Appellants contend that the Acts of 1951, 1953 and 1959, are unconstitutional because of alleged defects in the title and for the further reason that the Legislature had no power over property owned by the city in its proprietary capacity. Interestingly enough, no assault is levelled against the Act of 1945, which created the original board and authorized municipal operation of the plant.
In the case of City of Key West v. Lowe, the appellant here, plaintiff below, assaulted the constitutionality of House Bill 1251, Laws of 1959. By this Act the Legislature created the position of assistant city clerk and appointed Agnes P. Lowe to fill the job. The assistant city clerk was placed in exclusive control of the registration of voters and other election matters. This official was also authorized to appoint two deputies at salaries fixed by the Act. The statute further provided that the assistant city clerk would hold office under the Civil Service rules of the city.
This Act was assaulted by the appellants on the grounds that it constituted an unlawful invasion of the city's right of local self government, and that the Legislature had no power to create an office and designate the official co nomine to occupy it.
To support the decree of the Chancellor in both cases the appellees take the position that Florida municipalities do not enjoy *235 any residuum of local self government. They assert that under Section 8, Article VIII of the Florida Constitution, F.S.A., municipalities in this state are creatures of the Legislature and are absolutely subject to legislative control.
In the interest of brevity we resist the temptation to elaborate upon the history of municipal government in this country. The historical development of the respective arguments supporting and opposing the contention that by the very nature of its existence, a municipality enjoys the right of local self-government, offers delectable morsels for the legal historian.
The attorneys for the appellants have filed splendid briefs to support their contention that municipalities have historically exercised powers of local self-government. Unfortunately for appellants, this Court disposed of the matter adversely to their contentions many years ago.
Our own research reveals that there has been a division of authorities on the subject. They can be reconciled, however, by an analysis of the different constitutional provisions of the several states governing the creation and functioning of municipalities.
In some states the constitutions specifically provide for home rule cities and the classification of cities generally for home rule purposes. In those states the courts have recognized that municipalities exercise powers of local self-government by virtue of constitutional provisions. In other states specific constitutional provisions limiting legislative power over municipalities have the same effect.
In states such as Florida, where there are no such constitutional provisions, and where on the contrary the Constitution endows the Legislature with absolute control over municipalities, the rule is consistently otherwise. The fact that home rule and local self-government could be effected in Dade County only by constitutional amendment illustrates this situation.
Legislative authority over Florida municipalities is provided in Section 8, Article VIII, Florida Constitution, which reads as follows:
"The Legislature shall have power to establish, and to abolish, municipalities to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time. When any municipality shall be abolished, provision shall be made for the protection of its creditors."
In applying the quoted provision of the Constitution this Court has consistently adopted the generally accepted proposition that municipal corporations have no inherent right of self-government beyond legislative control of the state in the absence of some specific constitutional provision granting it to them. 62 C.J.S. Municipal Corporations § 184, p. 343; 37 Am.Jur. Municipal Corporations § 77, p. 691; McQuillin, Municipal Corporations, Vol. 2 (3rd Ed.), § 4.82; Rhyne, Municipal Law (1957) §§ 3-4, 4-2.
The appellants here insist that a state constitution in this country is a limitation upon, rather than a grant of power. This basic premise is correct but the application of the principle contended for by appellants does not follow. It is their contention that the provision of the Florida Constitution quoted above limits the powers of the Legislature thereby defined, and there being no organic limitation against municipal self-government a residuum of self-governing authority rests inherent in the people of the local community. This contention of appellants fails to take cognizance of several principles covered in this opinion, and particularly the proposition that there could be no municipal corporation in the absence of legislative action. In other words, the Legislature creates a municipality. It has the authority to abolish it and certainly has the power to regulate and control its government by statutory enactment.
*236 The position which we here take was clearly announced by this Court in State ex rel. Johnson v. Johns, 92 Fla. 187, 109 So. 228. There, an act of the Legislature abolished the government of the City of Hollywood and re-established it under a revised charter. By the enactment the Legislature specifically named five individuals to serve as city commissioners. The statute was assaulted on the ground that it deprived the people of the municipality of their organic right of local self-government. In denying the existence of such a right under the Florida Constitution, this Court concluded that legislative control over cities is absolute, subject only to the restriction that it shall not contravene some provision of the Constitution.
In State ex rel. McMullen v. Johnson, 102 Fla. 19, 135 So. 816, this Court considered a local act regulating municipal elections in the City of Tampa. The act created a board of elections and named the persons who should constitute the first board. The statute was sustained against the attack that it interfered with a claimed right of local self-government. Many aspects of the statute involved in State ex rel. McMullen v. Johnson, supra, were similar to the provisions of the local act in the instant case which created the office of assistant city clerk and endowed that official with control over the operation of elections. In State ex rel. McMullen v. Johnson, supra, we recognized the proposition that palpable abuse of power when committed in the enactment of laws or the improper exercise of delegated authority conferred by law will be remedied by the Courts when such action encroaches upon the personal or property rights of individuals. The power exercised by the Legislature under Section 8, Article VIII, Florida Constitution, is not unbridled, in that the Legislature will not be permitted to enact statutes that violate some other provision of the organic law. However, until it is clearly demonstrated that some provision of the Constitution has been violated, a statute is clothed with a presumption of correctness.
Appellants here urge that the authority conveyed to the utility board and to the assistant city clerk could be abused to the detriment of the people of the community even though the people themselves have had no direct part in establishing these agencies of the city government. The answer to this contention is simply that under our representative system the people control their government through legislative representation. The fact that governmental power may be abused if exercised by some unscrupulous official chosen to administer it, offers no support to the contention that the power itself cannot exist constitutionally to be exercised by capable and conscientious officials. If it be thought that the rule of our adjudicated cases invests too broad and comprehensive a power in the legislative branch of the government it should be remembered that the legislature was endowed with this authority by virtue of the very language of the Constitution itself. It was necessarily approved by the people themselves and so far as Section 8, Article VIII is concerned, has existed since the Constitution of 1885 was adopted. As a matter of historical fact, the Legislature of 1903 adopted a resolution proposing a constitutional amendment which would have repealed Section 8, Article VIII, supra, and which would have had the effect of establishing home rule powers for municipalities in various classes. This proposal was rejected by the electorate in the general election of 1904, and has never been revived.
Further, supporting the position of the appellees and sustaining the decree of the Chancellor is City of Orlando v. Evans, 132 Fla. 609, 182 So. 264, 265. The Orlando case involved a statute which, for all practical purposes, was identical with the statutes now before us regarding the Key West Utilities Board. The Orlando Act appointed by name the original Board and endowed the Board with complete control *237 and management of Orlando's municipally owned utilities. By coincidence, the writer of this opinion, as attorney for the City of Orlando, filed a complaint attacking the statute on the identical grounds asserted by the appellants in the instant case. This was in 1938. An examination of the briefs in the Orlando case reveals that counsel there relied on a number of the same authorities from other states now submitted by counsel for the appellants. In City of Orlando v. Evans, supra, it was contended, unsuccessfully, that inherent in every Florida municipality is the power of local self-government which cannot be ignored by the Legislature. This Court rejected the contention and reaffirmed its position that under the Florida Constitution, no such municipal authority exists.
Appellants in the instant case appear to take some comfort from various dissenting opinions of the late Justice Armstead Brown, who was an ardent judicial advocate of the principle of local self-government and home rule. Despite our abounding respect for the ability and written eloquence of our late brother, we are compelled to point out that in each instance when he so capably advocated his concept of the doctrine, he was very much in the minority. This writer can, with some grace, observe that in the same vein the decision of this Court in City of Orlando v. Evans, supra, was not received by him at the time with any degree of enthusiasm. Nevertheless, it is clearly the law of this state and is now well-established as such.
Appellants also seem to find some solace in the observations of the late Mr. Justice Buford in State ex rel. Landis v. Ault, 129 Fla. 686, 176 So. 789. In that decision the author commented that in his view the language of this Court in State ex rel. Johnson v. Johns, supra, might be subject to some question and, perhaps, reconsideration. However, it is of interest to note that both Justice Buford and Justice Brown concurred in the opinion in City of Orlando v. Evans, supra, which firmly and beyond question established that the Legislature has plenary power over Florida municipalities except where specifically restrained by the Constitution. So far as we have been able to ascertain, either from the helpful briefs of the parties, or from our own independent research, this rule is thoroughly established without exception in Florida and in states having constitutional provisions similar to ours.
With reference to the Key West Utilities Board, the appellants in that case contend also that the electric utilities are owned by the City of Key West in a proprietary, as distinguished from its governmental capacity. They then assert that the municipality enjoys all of the same privileges of ownership and control of property as does the individual citizen. To this end they contend that the Legislature, even under the board provisions of our Constitution, has no power to regulate or control municipally owned property which is held in a proprietary capacity.
City of Orlando v. Evans, supra, supplemented by State ex rel. Gibbs v. Couch, 139 Fla. 353, 190 So. 723, dispose of this contention adversely to the position of the appellants. It should be borne in mind that, while it has been said that a municipality may own property and exercise proprietary functions, nevertheless, the property remains public. So long as a statutory enactment recognizes this continued public nature of the property and merely sets up an agency for its operation and control in the continued interest of the public there can be no objection to such legislative action. We are not here holding that the Legislature could completely appropriate or divert to some different use, property owned by a municipality in its proprietary capacity. However, we are not here confronted with this problem. The Legislature in its wisdom merely established a municipal agency to operate the publicly owned property for the benefit of the public. Whether or not this Court deems such legislation wise or salutary is of no consequence at all. Granting the existence of *238 the power to act, the wisdom of exercising it and the necessity for its exercise are matters for legislative determination. The view which we have taken here and in prior cases is consistent with decisions in point from other jurisdictions. Monoghan v. Armatage, 1944, 218 Minn. 108, 15 N.W.2d 241, appeal dismissed 1945, 323 U.S. 681, 65 S.Ct. 436, 89 L.Ed. 552; Town of Bridgie v. County of Koochiching, 1948, 227 Minn. 320, 35 N.W.2d 537; Orleans Parish School Board v. City of New Orleans, La. App. 1952, 56 So.2d 280.
It was pointed out in City of Orlando v. Evans, supra, on rehearing, if the agency established to carry out the functions dedicated to it by the Legislature abuses its responsibility or is guilty of fraud, deceit or other unscrupulous conduct, then appropriate remedies are available.
We have not overlooked the contention of the appellants to the effect that the titles to the utility board statutes were defective. Our examination of these acts leads us to the conclusion that the titles sufficiently comport with requirements announced in prior decisions.
Finding as we do that the statutes under assault were not violative of any provisions of the Constitution the decrees of the Chancellor upholding the acts must be affirmed.
It is so ordered.
THOMAS, C.J., and TERRELL and HOBSON, JJ., concur.
DREW, Justice (concurring specially).
Were it not for the fact that this Court many years ago construed Section 8 of Article VIII of the Florida Constitution as vesting in the Legislature of this State the absolute legislative control over the municipalities within its borders, I would unhesitatingly declare the acts involved in this litigation to be unconstitutional and void for the reasons so ably pointed out by the late Mr. Justice Brown in his dissenting opinion in State ex rel. Johnson v. Jones, 92 Fla. 187, 107 So. 228. The reasons, however, which impelled me to dissent in Grubstein v. Urban Renewal Agency of Tampa, Fla., 115 So.2d 745, now require me to concur in the able opinion and judgment prepared by Mr. Justice THORNAL in this case.