### MYERS, et al v. HILLSBOROUGH COUNTY BOARD OF PUBLIC ASSISTANCE, et al.

No. 131987-C.

Circuit Court, Hillsborough County.

March 4, 1963.

Paul Antinori, Jr., of counsel, Fowler, White, Gillen, Humkey & Trenam, Tampa and Miami, for plaintiffs.

Shackleford, Farrior, Stallings, Glos & Evans, Tampa, and McClain, Cason & Turbiville, Tampa, for defendant Hillsborough County Board of Public Assistance.

McLean & McLean, Tampa, for defendant Hillsborough County.

Paull E. Dixon, Tampa, for defendant City of Tampa.

Paul B. Johnson, Tampa, for defendant State of Florida.

JOHN G. HODGES, Circuit Judge.

This cause came on to be heard before the court on February 18 and 19, 1963, for final hearing. The parties, in the pleadings and through a stipulation filed in the cause, have, without concession as to relevancy of the stipulated facts, eliminated ma-

terial factual disputes from the cause and, accordingly, at said final hearing the parties were concerned with argument of the several propositions of law asserted to be applicable to the issues involved. At the time of the final hearing there were also pending a number of motions upon which the court need not now rule in view of the disposition of this cause by means of this final decree.

*Statement of the case and discussion*

This action in essence is a suit by two taxpayers of Hillsborough County and the City of Tampa, contesting the constitutionality of two acts of the 1961 legislature, chapter 61-1007 and chapter 61-2260, Laws of Florida, requesting a determination of the validity thereof, and praying that the defendants Babnew, board of public assistance and the members thereof, and the other defendants, be enjoined from proceeding further or acting pursuant to said statutes. The court has carefully reviewed the enactments in question and believes that the plaintiffs have most ably and thoroughly contested their validity on every ground which could reasonably be advanced. The court, after intensive consideration of the arguments and authorities advanced by counsel for the respective parties, concedes that portions of the statutes, particularly the sections in dispute, are not models of skilled legislative draftsmanship and lucidity and have caused the court some struggle. The court also acknowledges that it entertains concepts of improvement in the prose and syntax employed in the subject legislation, both with respect to clear expression of the legislative intent and adaptive substance as it relates to the ends desired. That the enactments require some revisionary tailoring is not alarming. Most laws do.

In view of the obvious importance to the county and the City of Tampa and their citizens that any and all questions concerning the validity, vel non, of the statutes be properly resolved, the robust adversary process in which the opposing contentions of the parties were advanced has, in the court's opinion, served a salutary purpose by helping to point the way to careful and proper legislative alteration of the laws involved, in order that they may be fashioned to more clearly reflect the legislative design and fit the real needs for which they were conceived and enacted.

Inasmuch as there are no significant factual controversies present, the court will not make separately stated findings of fact. Instead, the court will attempt to discuss each statute separately in the revealing light of the various grounds of alleged invalidity so rigorously and ably urged against them. In so doing, the court will comment upon any relevant undisputed facts which pertain to each conclusion of law as to the several grounds. The

court believes that the entire picture can be best displayed by locating the areas of the statute exposed to attack, and that its conclusions of law and rulings on the real issues may be more clearly exhibited in this manner, not by stating the various assaults leveled at the enactments in an independent statement of facts.

At this step it is well to emphasize what the court is ruling upon and what the court is not ruling upon. For example, it was claimed by the plaintiffs that the board of public assistance of Hillsborough County, as created by chapter 61-1007, was unique in nature and constituted an incongruous and uneconomical combination of hospital and welfare functions. Conversely, it was argued by the board that its operations were far more economical than prior operations of a similar nature in the county had been in the past. In the last analysis all of these and similar arguments relate to the wisdom, policy or necessity of the enactments. It is not the prerogative of this court to rule upon legislative wisdom, State v. Bruno, 107 So.2d 9 (Fla. 1958). These are matters upon which those entertaining policy views different from those manifested through these statutes should properly address themselves to the legislature itself. The constitutional validity of legislation must be determined by the application of well settled rules of interpretation and not upon the predilection of judges as to what the law ought to be. Whether a law is wise or unwise or even foolish is none of this court's official business. Something has also been said of the manner in which the laws might be carried out by the board. The court is not addressing itself to the application or implementation of the statutes. These are matters of an administrative or political nature which the court avoids.

Moreover, at the outset, it should always be kept in mind that the court has an obligation where possible to sustain the constitutionality of a Florida statute unless persuaded beyond a reasonable doubt that it is unconstitutional, Armistead v. State, 41 So.2d 879 (Fla. 1949). When a statute permits of a construction which would render it unconstitutional and another reasonable construction which would render it constitutional, the court should adopt the latter, Boynton v. State, 64 So.2d 536 (Fla. 1953). A statute must be so construed by this court as not only to avoid the conclusion that it is unconstitutional but also to avoid grave doubts upon that score if practicable. The construction should be that which renders the act valid and effective rather than one that would render it of doubtful validity and incapable of definite and effective enforcement. A liberal rule of construction must always be applied when the constitutionality of legislative enactments is questioned because the presumption of validity continues until the contrary is proved beyond all reasonable uncertainty.

As will be mentioned more specifically hereafter, in at least two instances the court was more than slightly concerned with the validity of portions of chapter 61-1007, but has concluded that under these long standing and sound principles both statutes can successfully withstand those particular assaults, as well as all others made upon them herein.

As previously indicated, impatient perfection insists that the laws leave much to be desired. Cool practical reason assures that they are sufficient.

Finally, it should constantly be kept in mind that the constitution of Florida, unlike the federal constitution, is not a grant of powers but a limitation of powers, see, *e.g.*, Miami Beach v. Crandon, 160 Fla. 439, 35 So.2d 285 (1948).

*Questions presented and conclusions of law*
*As to chapter 61-1007*

Paragraphs 12 (a), (b), (c) and (d) of the amended complaint in effect contest the constitutionality of chapter 61-1007 on the ground that it is a local law applying only to Hillsborough County and that it is invalid because it was in fact passed as a general statute without an advertisement or provision for referendum, article III, section 21, Constitution of 1885.

The court is unable to determine beyond a reasonable doubt that the population bracket set forth in chapter 61-1007 constitutes an unreasonable classification. State v. Daniel, 87 Fla. 270, 99 So. 804 (1924), recognizes that welfare and related problems may create problems in larger counties which are not present in smaller ones. The plaintiffs themselves argued in effect that in very large counties even more centralization of the handling of such problems was required than in urban counties of less population. Therefore, the court is unable to conclude beyond a reasonable doubt that the legislature, in its wisdom and judgment, could not have reasonably concluded that welfare and related problems in counties having a population of less than 390,000 require a treatment different from that specified in chapter 61-1007, and that such problems should be treated in still another way in counties having a population in excess of 450,000. See Board of Public Instruction v. County Budget Comm'n., 90 So.2d 707 (Fla. 1956) ; Greene v. Gray, 87 So.2d 504 (Fla. 1956). The population bracket of 60,000 here involved is substantially larger than the one in Waybright v. Duval County, 142 Fla. 875, 196 So. 430 (1940), relied upon by the plaintiffs, and indeed the bracket is larger than the population of some 50 of the counties in this state.

One point argued by the plaintiffs under the general attack on chapter 61-1007 has given the court some real concern, which is that sections 9, 16 and 17 of chapter 61-1007 contain references to events which can only occur on one occasion, thereby limiting or preventing the potential applicability of chapter 61-1007 to other counties which may later move into the population bracket specified in the statute. The court concludes, however, that the references in section 16 and 17 can reasonably be construed to refer to the applicable date of the operative provisions of the statute in a particular county concerned. They do not expressly relate to the effective date of the statute as a law as was true in Anderson v. Board of Public Instruction, 102 Fla. 695, 136 So. 334 (1931), and Crandon v. Hazlett, 26 So.2d 638 (1946), and instead the language seems more nearly like that in chapter 30454, Acts of 1955, Laws of Florida, considered and upheld in Greene v. Gray, supra.

The court's greatest exertion involves section 9. After careful consideration it concludes that the section can be reasonably construed to provide that if after the next decennial census another county should move within the population bracket of 390,000-450,000 specified, the Governor would possess the power to appoint to the board in that county three members who would serve until their successors should be elected at the next general election. The fact that certain dates are specified, while perhaps unwise, and, indeed unnecessary, does not impel the court to analyze the legislative syntax of the section as requiring the appointment or election of the initial members of the board at specific or particular times prior to the next census and at no other time. There being another reasonable construction favoring validity, the court has the impression that it should adopt the same and gainsay the contentions of the plaintiffs to the contrary. The legislature may wish to address itself to this question in order to preclude any future controversy concerning the application of this statute in other Florida counties after other censuses in later years, but that is not this court's affair.

Paragraphs 12 (f) and (g) in effect assail the constitutionality of sections 7 and 13 of chapter 61-1007 on the ground that the former permits the board of public assistance to levy an ad valorem tax and section 13 permits the sale of bonds pledging ad valorem tax sources without a referendum. The court has no difficulty in concluding that both of these arguments are without solid merit. Chapter 61-1007 does not permit the board of public assistance to levy any tax. It is certainly true that such power is unfortunately referred to in the title of the act but it is also abundantly clear that the statute itself was amended prior to its passage in the legislature to expressly exclude any such power.

Beyond that, it is axiomatic that the legislature cannot extend to the board of public assistance the right to levy any ad valorem taxes pledged to retire bonds without the constitutional referendum, and the court should not and will not construe the statutes to have been passed in derogation of the constitution.

Paragraph 12 (h) of the amended complaint assaults section 9 of chapter 61-1007 on the ground that the chairman of the board of county commissioners of Hillsborough County and the mayor of the City of Tampa, which the court judicially notes to be the most populous municipality in Hillsborough County, are improperly designated as ex-officio members of the board and that they are neither appointed by the Governor nor elected by the people of Hillsborough County as required by article III, section 27 of the Florida constitution.

The court expended little effort in concluding that the chairman of the board of county commissioners is elected by the people within the meaning of said section.

The court is really concerned, however, with this argument as it relates to the mayor of the county's most populous municipality who, in this instance, is elected by the electors of the City of Tampa and not by county-wide electors and taxpayers. The provisions of section 9 would appear to create the mischief of discrimination and a denial of equal protection of the law, and this court is not convinced that it does not.

Keeping in mind that our constitution is one of limitation rather than a grant of powers, the provisions of article III, section 27, do not appear to expressly forbid such public service by the mayor, or to necessarily require that a member of any governmental agency such as the board of public assistance be elected by all of the electors within the jurisdiction of the agency. No specific authority has been cited by the plaintiffs in support of their position and the court has found no such authority in its own effort. The Hillsborough County Aviation Authority, as created by chapter 23339, Laws of Florida 1945, includes a member of the county commission of Hillsborough County and the mayor of the City of Tampa. In passing upon the constitutionality of the act creating the Aviation Authority, in Wilson v. Hillsborough County Aviation Authority, 138 So.2d 65, the presence of these two members did not merit comment by the court. While harboring some real apprehension, the court is unable to conclude beyond a reasonable doubt that section 9 of chapter 61-1007 is unconstitutional.

The court is not called upon to actually come to grips with this question here because the petitioners do not come within the class

of persons against which the statute is alleged to discriminate. One who is not himself denied constitutional privilege by legislative act may not be heard to assert unconstitutionality on behalf of some other person who is, or may at some future time be, affected by such act. A valid challenger of constitutionality must also be affected by the portion of the statute which he attacks.

Section 12 (i) assails section 12 limiting campaign expenditures of candidates for membership on the board. Again, this may be unwise but it does not appear to be an improper limitation in accordance with the powers granted to the legislature by article III, section 26, Florida constitution. Moreover, it seems to apply equally to all candidates or potential candidates and, therefore, the court finds the same is valid.

All other contentions argued by the plaintiffs have been considered and found to be without merit.

### As to chapter 61-2260

The plaintiffs concede that chapter 61-2260 was properly advertised and passed as a local bill, and do not contest the transfer by this act of certain properties belonging to Hillsborough County or the former Hillsborough County welfare board to the board of public assistance. However, the plaintiffs do contest the transfer by this statute of certain properties belonging to the City of Tampa to the board of public assistance. The main propulsion of the plaintiffs' argument is that the transfer provided by this statute is in effect the taking of private property without just compensation as provided for by section 12 of the Declaration of Rights of the constitution of the state of Florida. Even if it be assumed that the properties in question were held by the City of Tampa in its proprietary capacity, it is clear that the property was at the time of transfer public and not private property. Further, the transfer was to another public agency, which, by the provisions of chapter 61-1007, is required to operate the same and to make proper use of them. Therefore, the court concludes that the transfer of the properties in question was within the power of the legislature and that said transfer was not unconstitutional. See Cobo v. O'Bryant, 116 So.2d 233 (Fla. 1959); City of Orlando v. Evans, 132 Fla. 609, 182 So. 264 (1938); Monoghan v. Armatage, 218 Minn. 108, 15 NW2d 241 (1944).

### Final conclusion and order

The court concludes that the statutes in question are not unconstitutional and that the defendants herein may properly discharge thereunder the several responsibilities imposed upon them by said statutes.

In view of the foregoing opinion and conclusions of law, it is ordered and adjudged as follows — (1) That the court has jurisdiction of the subject matter and the parties and venue is properly laid in Hillsborough County. (2) Suit herein is properly brought as a taxpayers' suit by the plaintiffs on behalf of themselves and all other taxpayers similarly situated. (3) The plaintiffs are entitled to an adjudication of the constitutionality of chapter 61-1007, Laws of Florida, and chapter 61-2260, Laws of Florida, and to a determination of the rights thereunder of themselves and all others similarly situated and of the defendants. (4) Chapter 61-1007 and chapter 61-2260 are hereby declared to be constitutional and valid enactments of the legislature of the state of Florida. (5) The prayer of the plaintiffs that said statutes be declared unconstitutional and void is denied. (6) The prayer of the plaintiffs that the defendants be enjoined in effect from further proceeding under said statutes is denied.